O’CONNELL, Justice.
The claimant, Helen Gordon, while employed as a waitress by Walgreen’s Drug Store suffered a compensable injury to her hip on January 9, 1959 and on February 14, 1959 suffered an injury to both hands.
The two accidents were treated in separate claims and adjudicated by different orders.
Only the order of the full commission affirming the order of the deputy denying an award of compensation for the injury to *858 the claimant’s hands is involved in this proceeding.
The hand injuries occurred when claimant caught a small cardboard sign thrown to her by another employee. Small nails in the sign punctured the middle finger of claimant’s right hand and the thumb of her left. The next day both injured digits were infected and swollen and shortly thereafter eczematoid dermatitis appeared.
Following a hearing held on February 4, 1960 Deputy T.' Frank Hobson, Jr. entered an order, dated 29 February 1960, in which he found that claimant, who was then working four hours daily rather that the eight hours she had worked daily prior to the injuries to her hip and hands, had suffered no temporary partial disability because of the injury to and resulting dermatitis on her hands. He held that all temporary disability suffered by her was due to- the hip injury.
Here it should be said that in the order adjudicating the hip injury claim, the same deputy made an award in which he fully compensated the claimant for all temporary disability suffered by her up to December 29, 1959, the date the hip was found to be cured with no residual permanent disability.
Returning to the order of February 29th, although he found the dermatitis on claimant’s hands not to have caused any temporary disability, the deputy found that this condition had not reached maximum medical recovery. He ordered the employer to furnish such further medical treatment as required and reserved jurisdiction to determine if claimant had any permanent partial disability as a result of the disability.
Thereafter another hearing on the hand injury was held on August 15,, 1961 before Deputy Allen C. Anderson and on October 6, 1961 this deputy entered his order in which he found that the dermatitis condition reached maximum medical improvement on January 16, 1961, claimant had no limit of function to her hands -as a result of the dermatitis, and that :;she had not sustained any loss of wage earning capacity or functional loss as a result of the dermatitis. This order then denied and dismissed the . claim.
On review the commission affirmed the deputy’s order and the claimant has petitioned us for review.
The first point for decision is whether the injury to claimant’s hands is a scheduled injury, as the employer and carrier contend, or is an occupational disease, as claimant argues it is.
This question is significant because of the difference in basis for computing compensation for scheduled and nonscheduled injuries. ■
We think the condition of claimant’s, hands must be classified and treated as a scheduled injury rather than as an occupational disease for several-reasons.
First, the evidence is undisputed that the condition of claimant’s hands arose out of the puncturing and subsequent infection of the digits of her hands, which infection resulted in the dermatitis. Thus, the dermatitis was the result of an injury to the hands, not the result of a disease attributable to claimant’s occupation.
Second, F.S. 440.151(2), F.S.A., defines an occupational disease as one which “is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment, and to. exclude all ordinary diseases of life to which the general public are exposed.” There is no evidence in this record indicating that eczematic dermatitis is an occupational hazard of waitresses. Rather, the testimony of one of claimant’s dermatologists was that:
“No one knows exactly what may cause it. There are many aggravating factors. It occurs, this particular type to the hands, occurs chiefly in housewives and is thought to have some relation to soap and water.”
Moreover, the medical testimony and that of claimant all pinpoint the cause of the *859 -dermatitis as being the puncturing of her hands and the resulting infection. Claimant, who had worked as a waitress most of her adult life, testified she had never had dermatitis prior to the accident and subsequent infection which so sensitized her hands as to make them subj ect to dermatitis.
We are driven to the conclusion that the claimant’s condition must be held to be and treated as a scheduled injury to the hands, and not as an occupational disease.
This conclusion leaves to be determined only the question of whether the commission was correct in affirming Deputy Anderson’s order finding that the claimant had suffered no functional loss of her hands because of the dermatitis.
We think that this deputy erred in this finding and the commission also erred in affirming the order.
It is true that the evidence shows that at the time of the last hearing in this cause, the dermatitis being in remission, the claimant’s hands in the mechanical sense functioned normally, for there was no damage to or limit of motion of the bones, muscles or tendons.
If compensation for loss of use to a scheduled part of the body is to be limited to the loss of mechanical dexterity, range of motion or organic defect, then the deputy and the commission are correct.
However, we do not believe that the legislature intended such a narrow meaning be given the term “loss of use” as it is employed in Sec. 440.15(3) (s), which is the subsection to be utilized here. Nor do we think that the liberal interpretation which we are required to give the statute permits such a limited construction of the term.
Loss of use, total or partial, of an organ or member, in workmen’s compensation cases,, is never determined in the abstract, but rather is always considered in light of the use which a claimant must reasonably make of the organ or member in his or her employment. Thus, it is not enough to consider the mechanical functioning of claimant’s hands without also considering what will reasonably be expected to happen to them as a result of their use by claimant in her work, or stated another way the effect of her being denied full use of her hands by the reasonable certainty of a flaring of her condition if she does not limit their use.
The loss of use for which compensation is authorized under Sec. 440.15(3) is that loss of use which affects the capacity of a claimant to earn wages in the same employment followed at the time of an injury or in any other work which he or she can do.
In those injuries which are organic and affect the mechanical use and cause limitation of motion the legislature presumes loss of wages and had predetermined the amount of loss. The assessment of the amount of partial loss of use by percentages based on loss of mechanical function is relatively easy, although never exact, but in a case such as this the determination is not as easy.
Here, when claimant’s dermatitis is in remission, she suffers no limitation of motion of or organic defect in her hands. However, the evidence also shows that when the condition flares up the skin of the hands will or may crack and “weep” limiting their motion and causing pain in their use.
More important, the treating dermatologist testified that he had warned claimant to avoid contact with “any sort of caustics or alkalies * * * namely, soaps and cleaning agents” saying, “It is well known that all of the alkali products will flare these cases of hand eczemas.” He stated that even the drying effect of water is apparently an irritant.
Claimant, a white woman in her early 50’s, has been a waitress most of her adult life. Her only other work experience has been in a bakery.
The undisputed evidence shows that the normal work of a waitress requires “wet work”, i. e. wiping and cleaning of tables, *860 and use of water and cleaning agents which, the medical evidence shows will “flare” claimant’s dermatitis.
The evidence also is undisputed that claimant has tried working as a waitress at several establishments but has been able to find only one restaurant where, by special arrangement with the employer, she is not required to do cleaning work. She testified that if she could do the wet work and cleaning normal to her occupation as required in other restaurants she could make considerably more in tips. She testified that she did work in one such place and made $12.00-$14.00 a night in tips for several days but was fired because she could not do the cleaning and wet work. At the place where she works under special arrangement she only makes approximately $30.00 per week, including salary and tips.
This evidence and the remainder of the record lead to the conclusion that the condition of her hands prevents claimant from using them as normally required in her occupation and that because of this limitation of use there is an indication that she is denied some of her wage earning capacity.
We think this limitation in use of claimant’s hands, enforced by an effort to avoid the reasonable expectation of a flaring or worsening of the dermatitis, is equally a “loss of use” as is a loss of use due to an organic or mechanical injury to the hands and that claimant is entitled to be compensated therefor in an amount to be determined on further hearing conducted on this theory.
As we view this matter the claimant here suffers just as real a loss of use because of the dermatitis as she would be held to suffer if her inability to do wet work and cleaning was due to an organic defect or limitation of motion of her hands. The net result is the same.
Determination by the deputy on remand of the percentage of partial loss of use, if any, of claimant’s hands for which claimant should be compensated will not be easy.
Although a claimant’s loss of wage earning capacity is not a factor to be considered in the usual scheduled injury case, in this case the difference in wages which claimant testified she could earn if she could use her hands fully is perhaps the most conclusive factor to prove that she has suffered a loss or denial of use of her hands.
While the loss of wages, if any, which the deputy may hereafter find to be attributable to the dermatitis should not be considered as the only measure of loss of use of her hands, we think the deputy can and should consider it along with all other factors bearing on the question which may be offered by the parties or conceived by the deputy.
Among other factors which the deputy may determine to be relevant are (1) the percentage of time that the claimant may with reasonable medical certainty be wholly prevented from working because of her hands, and (2) the effect which the appearance and condition of her hands may have on her competing in the labor market in the work she can do.
The medical evidence shows that this kind of dermatitis is never .cured, therefore any order entered should make appropriate provision for future medical benefits attributable to the injury.
We are aware that in the order entered in this cause by Deputy Hobson, dated February 29, 1960, that deputy found the claimant had suffered no disability because of her hands during the period covered by that order. The claimant accepted that order without review. Therefore any compensation awarded claimant on remand must of necessity be for the period following that order.
We also recognize that the claimant testified that she was voluntarily limiting the hours of her work because of the hip injury, for which she has already been compensated, a back condition and home responsibilities. It will be necessary for the deputy to isolate the voluntary limitations which claimant has *861 placed on her efforts from those which are attributable solely to the dermatitis.
We take pains to make clear that this opinion is limited to the facts of this case in which there was a compensable injury followed by an infection which in turn resulted in dermatitis. What we have said in this opinion is not intended to and may well not apply to a contact dermatitis case arising without an injury.
For the reasons above expressed the petition for certiorari is granted and the order of the full commission is quashed with directions that the cause be remanded •to the deputy commissioner for further proceedings consistent with this opinion.
It is so ordered.
ROBERTS, C. J., and TERRELL and THOMAS, JJ., concur.
CALDWELL, J., dissents.