583 So.2d 720 (1991)
FOXBILT ELECTRIC and Florida Insurance Guaranty Association, Appellants,
v.
Richard STANTON, Appellee.
No. 90-2154.
District Court of Appeal of Florida, First District.
July 3, 1991.
Rehearing Denied August 14, 1991.
*721 Elizabeth C. Wheeler and Michael F. Wilkes of Smalbein, Johnson, Rosier, Bussey, Rooney & Ebbets, P.A., Orlando, for appellants.
Thomas E. Thoburn, Cocoa, Bill McCabe, Longwood, for appellee.
SMITH, Judge.
The employer/carrier (E/C) appeal an order of the judge of compensation claims (JCC) finding compensable claimant's contraction of Lyme disease from a tick bite received at work, and awarding payment of benefits. We affirm.
Although there is conflicting evidence, there is competent, substantial evidence supporting the judge's ruling. On March 8, 1985, claimant was digging a ditch to lay conduit for electrical lines in a wildlife preserve at Cape Canaveral Air Force Station when he was bitten by a tick on the upper right calf. He reported the bite to his supervisor on the same day he was bitten and his supervisor saw the tick. In the wildlife preserve are many deer and migratory birds that carry ticks. When claimant returned home that evening, his wife, an LPN, removed the tick with a pair of tweezers. Between ten days and two weeks after the bite, a red spot occurred at the area of the bite which was small at first but grew to two to three inches in diameter. The spot was dark or purplish red in the middle and looked like a bulls-eye. Within a week or two of the bite, claimant began getting chills and fever. His ankles started to swell, the swelling went into his knees and wrists, and his skin got so sensitive that he could hardly touch himself. He experienced fatigue, heart palpitations, dizziness and blurred vision. By July 26, 1985, claimant could no longer work.
While some of the doctors opined that a diagnosis of Lyme disease from this tick bite was not medically indicated, the more persuasive weight of medical testimony was to the contrary. Claimant's treating physician, Dr. Newman, a board certified neurologist, felt that because claimant had peripheral neuropathy (sensitive skin) and joint pain preceded by a tick bite, that claimant had Lyme disease. He recognized that claimant had two negative serological tests for Lyme disease, but explained that in his review of medical literature, he found that patients who demonstrate Lyme disease do have negative serum tests. Dr. Newman explained that the purpific area observed after the tick bite could have been the erythema chronicum migrans (ECM) rash (a rash associated with Lyme disease.) *722 This rash, plus the tick bite, plus the joint pain, and cardiac and neurologic involvement in the form of peripheral neuropathy led Dr. Newman to the diagnosis of Lyme disease within a reasonable medical probability even in the absence of positive serological tests.
Also testifying in claimant's behalf was Dr. Papendick, an expert in Lyme disease residing in Wisconsin. Dr. Papendick has treated over 220 cases in his Wisconsin office and has assisted with 135 other cases in ten other states. He reviewed claimant's records and discussed the case with Dr. Newman and claimant on several occasions. He felt within a reasonable degree of medical certainty or probability that claimant suffered from Lyme disease from the tick bite. He stated, in fact, that he felt 100% certainty that claimant has Lyme disease. He explained that the tick bite developed the classic bulls-eye rash, which is indicative of Lyme disease, and that there is nothing else that will do that. Further, claimant had multiple system problems, including the rash, multiple aches, joint aching, vision disturbance, difficulty with mental concentration, weakness, fatigue and swelling of the feet and legs. Multisystem involvement is indicative of Lyme disease. Also, claimant developed flu-like symptoms within a relatively short period of time after the bite. Dr. Papendick testified that it is very common that serological tests will be negative with someone who has Lyme disease. He testified that there are no tests that can tell absolutely whether or not a person has Lyme disease, although doctors are presently experimenting with new tests. Dr. Papendick recommended long-term treatment of claimant with the antibiotic Minocin. Claimant was put on Minocin in September 1989, and in his report of January 8, 1990, Dr. Newman indicated that claimant had made some improvement.
Under the circumstances, it was not improper for the JCC to accept the testimony of these doctors over the testimony of the E/C's expert, Dr. Dickensheets. Dr. Dickensheets had merely reviewed claimant's medical records, not seen him. Unlike Dr. Papendick, who had wide experience and expertise in Lyme disease, Dr. Dickensheets had seen only about five cases of Lyme disease, although he was then treating one patient who might have Lyme disease. Dr. Dickensheets recognized that probably the most reliable diagnosis for Lyme disease is predicated upon the onset of the ECM rash. However, relying on some of the contrary evidence in this record indicating that claimant did not experience the onset of this rash, Dr. Dickensheets opined that claimant did not have Lyme disease. Thus, his opinion was based upon his view of evidence which was in conflict with the evidence found by the others to establish that claimant did experience this rash.
Next, Dr. Dickensheets gave as a reason for rejecting the diagnosis of Lyme disease, the fact that claimant had not responded to another antibiotic recommended for Lyme disease, which was prescribed for him, and which claimant took for fourteen days. At the same time, however, Dr. Papendick explained that this antibiotic should have been taken for a much longer period of time and that improvement could not be expected with just fourteen days use. Finally, Dr. Dickensheets relied upon the fact that claimant had negative serological testing for Lyme disease. Yet, Dr. Dickensheets acknowledged that negative testing can occur. At the same time, Dr. Dickensheets referred to the "Florida Lyme Disease Case Definition" prepared by the Department of Health and Rehabilitative Services which, significantly, does not require seropositive testing for the diagnosis of either definite or probable cases of Lyme disease.
On appeal, in addition to urging that the JCC's order is not based on competent, substantial evidence, a conclusion which we find is not substantiated by the record, the E/C further contend that because this case involves a disease, the claimant was required to demonstrate causal connection by clear evidence rather than by merely showing that it is logical that the injury arose out of the claimant's employment or that by a preponderance of probabilities it appears that it arose out of such employment. Harris v. Josephs of Greater Miami, Inc., 122 So.2d 561 (Fla. 1960) (claimant, a beautician, *723 developed dermatitis which her doctor diagnosed as related to her use of hair dyes in her employment; however, the claimant had been working for 30 years using chemicals and had no prior history of dermatitis, she used rubber gloves in her work, and a dermatologist appointed by the deputy conducted patch tests using chemicals and dyes in claimant's work environment and the tests were inconclusive  claim denied).
However, the E/C overlook the qualifying language in Harris. This rule applies only when the disease is not the result of an external occurrence or accident. Compare Gordon v. Walgreen's Drug Store, 149 So.2d 857, 858 (Fla. 1963) (waitress contracted dermatitis after puncturing her fingers with nails  dermatitis result of injury to the hands, not the result of a disease attributable to claimant's occupation; injury treated as scheduled injury rather than occupational disease). As recognized by Larson in his widely accepted treatise, the contraction of disease is deemed an injury by accident if due to some unexpected or unusual event or exposure. An infectious disease may be held accidental if the germs gain entrance through a scratch or through unexpected or abnormal exposure to infection. Applying this same reasoning, a disease which is acquired by the bite of an insect is an accident. 1B A. Larson, The Law of Workmen's Compensation, § 40.00, et seq. (1991). Thus, in analogous situations, courts have recognized that Rocky Mountain spotted fever from a tick bite is an injury by accident. Id. at § 40.20.
In this case, as shown by competent, substantial evidence, there was a clearly identifiable accident and injury which occurred during the course and scope of claimant's employment  a tick bite  which resulted in claimant contracting Lyme disease. Thus, neither Harris nor the other cases relied upon by the E/C offer any basis for denial of compensation.
AFFIRMED.
SHIVERS, C.J., and MINER, J., concur.