MISSOURI, KANSAS & TEXAS RAILWAY COMPANY V.
J. K. P. THOMAS AND WIFE.

No. 195.

1. Railroad Crossing Public Road—Signals.

The statute (article 4232, amended March 21, 1893) requiring signals (by ring-
ing a bell or causing a whistle to be blown) to be given on trains approach-
ing a crossing of a public road does not apply to a crossing not upon same
grade. It was reversible error to instruct otherwise, where the crossing was
upon a different grade, in an action for damages for injuries received from
a frightened team at a crossing upon different grades .......... ........ 286

2. Same.

Independent of statute, the law imposes upon a railway the duty of exercising
reasonable diligence and care in the running of its trains to avoid injury to
others, and the failure to do so is negligence. Whether a given condition
from its circumstances constitutes negligence is a fact for the jury........ 287

ERROR to Court of Civil Appeals for Fifth District, in an appeal
from Grayson County.

This was a suit brought by J. K. P. Thomas and Jennie Thomas, his
wife, for damages for personal injuries received by her under circum-
stances as given in application for writ of error, as follows: It ap-
peared that Jennie Thomas was travelling in a wagon driven by her
brother upon a public road, leading from Denison to Colbert's ferry,
running on the west side of defendant's railway, which turned east and
crossed from the west side, passing underneath a trestle fourteen to
sixteen feet high, upon which the railway track was elevated, and
upon which it crossed a small stream known as Duck creek; and that
while the team was being driven underneath this trestle the engine of
defendant passed overhead, alarming the team and causing the injury;
and there was evidence to support a finding that no signals by bell or
whistle were given by the engine on its approach, and that the omis-
sion of such signals caused the driver of the team to approach and be
under the trestle at the time the engine was passing overhead.

The trial court instructed the jury that the law required the em-
ployes of a railway company operating its engines to blow a whistle or
ring a bell at a distance of eighty rods from the crossing, and keep the
bell ringing until it should have crossed such public road, and that it
was the duty of defendant to give such signals, or one of them, where
a public road passed underneath the trestle work of a railway track.

Verdict and judgment for $1850. On appeal the charge was assigned
as error, and the Court of Civil Appeals held that the statutes of the
State (Revised Statutes, article 4232) applied to the case where a pub-
lic road passed underneath the tracks of a railway, and that the sig-
nals mentioned in the statute were required to be given on the approach
of an engine to such a place, and that their omission rendered defend-

ant liable for damages occasioned thereby. This was the only question made upon the hearing on writ of error.

*R. C. Foster* and *A. E. Wilkinson*, for plaintiff in error.—The sole question presented by this application for writ of error is, whether the Court of Civil Appeals correctly ruled in holding that the words "cross any public road or street," in article 4232 of the Revised Statutes, apply to a place where a public road runs under the track and does not touch or intersect it. The court assumes that to "cross" includes this idea, and that for them to undertake to place limitations upon its application would be nothing less than judicial legislation. This would be true if the word "cross" means what the court assumes that it does, and it would be equally true that if it does not have that meaning it would be judicial legislation to extend its operation to such a case as the present.

We are brought back to the word itself and its meaning. Webster defines the word, "to be or lie athwart." This does not mean to dive under or to soar above, but implies an intersection of lines in the same plane.

We get some light on the meaning of the term from the statute itself. The same article (4232), after providing what shall be done "where the railroad shall cross any public road," goes on to regulate what precautions shall be observed "approaching a place where two lines of railroad cross each other," and the word "cross," used as to railway crossings in the same sentence with the same word applied to highway crossings, must evidently mean the same thing, and be used precisely in the same sense. It can not be possible that the Legislature intended so senseless a regulation as that trains should be brought to a full stop at every point where they may be about to pass underneath or over the track of another, and where collision would be impossible.

Such regulations of the movements of engines on approaching railway crossings are all but universal; but railroad trains have always been operated upon the assumption that they had no application except to crossings at grade. We venture to suggest that had your honors' attention been first called to this application of the statute by seeing the engineer of a train, on approaching the point where another railway track passed underneath a trestle which his own train was about to go over, deliberately bring his train to a standstill before attempting the passage, it would never occur to your minds that this was a thing that the statute contemplated, or that such an operation would awaken any feeling but amusement at what would be regarded as excessive scrupulosity.

The statute is a penal one, and if the view taken by the Court of Civil Appeals is correct, such engineer would be liable to a fine of $100

if he failed to come to a full stop on approaching an underneath or overhead railroad crossing. Yet we doubt if it has ever entered into the mind of any engineer, any railroad man, or any one watching the operation of their trains, that such a stop was required at such a crossing.

The fact that the statute is a penal one should, in our view, be taken into consideration in determining whether it should be given any such extended application as is sought.

The application of the law in the sense in which the court has given it to highway crossings is not so palpably absurd as it is in the matter of railway crossings, but is wholly unnecessary. All the rights of the public would be fully protected by treating negligence in such cases as a question of fact, letting each case stand on its own merits and circumstances, and leaving it to the jury to say whether such precautions were demanded.

*Randell & Wolfe,* for defendants in error.—It is the duty of a railway company to give the signals required by law, whether the public road crosses the railway at grade or passes underneath the trestle work of such railway. Railway v. Chapman, 57 Texas, 75; Rev. Stats., art. 4232.

Appellant seeks to have the court construe article 4232 of the Revised Statutes as applicable only to such crossings as are made at grade. If such a construction should be placed on this article, then plaintiff's cause of action must fail. We fail to see any sufficient reason why it should be held that the statutory signals should not be given at crossings like the one at which Mrs. Thomas was injured. The language of the statute is, that the signal should be given at the distance of at least eighty rods from the place where the railroad shall cross any public road or street, which is certainly broad enough to cover any sort of crossing, whether super, sub, or at grade. Gentlemen in their argument inform us that the Legislatures of some States have provided by legislative enactment that the signals should be given only at "grade or lawful crossings." We call the court's attention to the fact that our Legislature has made no such exception.

The reason for requiring the signals to be given is to lessen the liability of accident at these crossings. There are other dangers than that of an actual collision. This fact is recognized by our Supreme Court in Railway v. Chapman, above cited. The court there says, that if the team was frightened by the near approach of the train, and the near approach was caused by the failure to sound the signal, the company would be liable. By giving these signals the danger of teams being frightened by passing trains is greatly lessened. Parties are warned of the approach of the train, and being put on their guard may remain at a safe distance, or take such other precautionary measures as will be necessary for their safety.

There is greater reason for requiring these signals to be given at crossings of the character at which this accident occurred than there is for requiring the signal where the public road and the railway might run parallel to each other. In the very nature of things it is necessary that there should be points at which public roads and railways would cross, but on the other hand it is not absolutely necessary in any case that a public road and railway should parallel each other at a near or unsafe distance. Our Legislature, it would seem to us, has sought to provide precautionary measures for circumstances which must necessarily exist. We fail to see how the giving of these signals, at the time and in the manner required by law, could cause more danger or injury at crossings made under a trestle than if they were not given. It is true that if the signal were not given at the proper time, and travellers on the public road, like in the present case, had no warning of the approach of the train until they were immediately under the trestle, there might be danger from giving the signal. On the other hand, it is equally true that if the signals were given at the time and place required by the statute, there should not be the danger of travellers being entrapped in these under-grade crossings.

DENMAN, ASSOCIATE JUSTICE.—Thomas and wife sued the railroad to recover damages resulting from injuries received by the wife from the overturning of a wagon in which she was riding with others along a public road over which the railroad track passed on a trestle about fifteen feet high, the overturning of the wagon being alleged to have been caused by the team becoming frightened at the noise of an engine which ran onto said trestle, without ringing the bell or blowing the whistle, just as the wagon was passing under the trestle. The court below charged the jury, that it was the duty of the employes of the railroad to give the signals required by statute when approaching the point where said road ran under said trestle, and that if the injuries of the wife were caused by the failure to give such signals, plaintiffs were entitled to recover.

The railroad in this court assigns said charge as error, in that the statute requiring signals to be given on approaching a crossing of a public road does not apply to any crossing except at grade.

The statute reads as follows: "Art. 4232. A bell of at least thirty pounds weight or a steam whistle shall be placed on each locomotive engine, and the whistle shall be blown or the bell rung at the distance of at least eighty rods from the place where the railroad shall cross any public road or street, and such bell shall be kept ringing until it shall have crossed such public road or street, and each locomotive engine approaching a place where two lines of railway cross each other shall, before reaching such railroad crossing, be brought to a full stop; and any engineer having charge of such engine, and neg-

lecting to comply with any of the provisions of this act, shall be fined in any sum not less than five dollars nor more than one hundred dollars for such neglect, and the corporation operating such railroad shall be liable for all damages which shall be sustained by any person by reason of any such neglect." Acts 1883, p. 28.

The effect of the charge complained of was to inform the jury that if the injuries of the wife were caused by a failure of the employes of the railroad to give the statutory signals, such failure was negligence per se. It took from the jury the question of fact as to whether it was negligence for the railroad to run the engine over the public road on the trestle without giving any warning of its approach, and made defendant's liability depend upon the sole question as to whether it failed to give the particular signals prescribed by the statute, and whether such failure caused the injuries. If the statute above quoted does not apply to the class of cases where the railroad does not cross the public road at grade, but runs under or over it, then the charge complained of is error.

Section 13 of "An Act to regulate railroad companies," approved February 7, 1853, was adopted as article 4232 of the Revised Statutes, and was not amended until the Act of 1883, above quoted. Until amended, it required the ringing of the bell or blowing of the whistle *until the road or street was crossed.* If limited to crossings at grade, this requirement is a reasonable and wise safeguard against collisions which may occur at any time before the engine has entirely crossed the street or road, but if applied to places where the public road runs over the railroad on a bridge, or under a trestle, as in this case, it would greatly imperil persons passing in vehicles over or under the track. It would be difficult to devise more effectual means of frightening teams than to ring the bells or blow the whistles of the engines passing immediately over or under them. If the statute applies, the engineer has no discretion to stop giving the prescribed signals when about to pass over a public road or street on a trestle or under a bridge forming part of a public road or street, but is compelled, under severe penalty, to continue giving the signal until his engine "shall have crossed such road or street," although such signals can accomplish no good, and are fraught with danger to the travelling public. The Act of 1883 does not require the whistle to be continually blown until the road or street is crossed, but does require the ringing of the bell, and therefore does not affect the above reasoning.

Again, the Act of 1883 above quoted uses the word "cross" twice as a verb in the same sentence, without any intimation that it is used in a different sense in one place from what it is in another. The last use of the word evidently refers only to cases where railroads cross each other at grade, for it would be entirely useless and annoying to the travelling public to require a train to come to a full stop before pass-

ing under or over another railroad's track, as no collision is, in such cases, possible. It follows, that by incorporating this amendment into the same sentence with the retained portion of section 13 of the Act of 1853, the Legislature has construed the Act of 1853 as being applicable only to crossings at grade. We are of opinion that the statute is not applicable to the crossing in question, and that the court erred in charging the jury as above stated.

It does not necessarily follow that the railroad company is not liable to plaintiffs for the injuries inflicted upon his wife by the overturning of the wagon. Independent of the statute, the law imposes upon a railroad the duty of exercising reasonable care in the running of its trains to avoid injuring others, and the failure so to do is negligence. Whether the failure to give warning of the approach of a train is under all the circumstances of a case, negligence, must, in the absence of a statute, be left to the jury as a question of fact.

For the error in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 12, 1894.