GALVESTON, H. & S. A. RY. CO. v.
PINGENOT et al.

(Court of Civil Appeals of Texas. San Antonio. Nov. 29, 1911. Rehearing Denied Jan. 3, 1912.)

1. EVIDENCE (§ 265*)—DECLARATIONS.

Whether there was negligence or contributory negligence depends on the facts of the case, and not on whether deceased, caught by cars coming together, as he was attempting to pass through an opening between them, going to the company depot, made a dying declaration: "It wasn't their fault; I took the chances of walking 'through"—meaning, if he had not attempted to cross the track, he would not have been hurt.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. § 265.*]

2. DEATH (§ 57*) — ACTION — ISSUES AND PROOF.

Defendant in an action for death by negligence is not entitled to a trial of the question of deceased having been an embezzler.

[Ed. Note.—For other cases, see Death, Dec. Dig. § 57.*]

3. APPEAL AND ERROR (§ 1058*)—HARMLESS ERROR—NUMBER OF WITNESSES.

Even if defendant, in an action for death by negligence, was entitled to show that deceased was an embezzler, it cannot complain of rejection of testimony that he was such; it having been allowed to give the same testimony by two other witnesses.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4200–4206; Dec. Dig. § 1058.*]

4. APPEAL AND ERROR (§ 978*)—REVIEW—JUDICIAL DISCRETION.

The denial of new trial, asked for on the ground of misconduct of the jury in their discussion in the jury room, will not be disturbed; the discretion of the trial court in that respect being reasonably exercised.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig. § 978.*]

5. RAILROADS (§ 397*) — INJURY TO PERSON CROSSING TRACKS—NEGLIGENCE—SIGNALS—EVIDENCE.

Where cars were left standing, with an opening between them, at a place customarily used by persons going to the depot of the railroad company, wide enough to constitute an invitation to persons walking to enter it, and as one was passing through they were suddenly brought together, evidence of the absence of warning by whistle, as well as failure to give it by other means, is admissible on the issue of negligence; with the difference that, if it was a place where no whistle was required by statute, the question of failure to give it being negligence is one of fact, while the failure to give it when required by statute is negligence per se.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1344–1355; Dec. Dig. § 397.*]

6. APPEAL AND ERROR (§ 548*) — ASSIGNMENTS OF ERROR—BILL OF EXCEPTIONS.

An assignment of error to the admission of evidence is unavailing when not supported by a proper bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2433–2440; Dec. Dig. § 548.*]

7. RAILROADS (§ 397*) — INJURY TO PERSON CROSSING TRACKS — CONTRIBUTORY NEGLIGENCE—EVIDENCE—RULES OF COMPANY.

Where one, when crossing the tracks of a railroad, at a place customarily used by those going to the company's depot, was killed by the cars, standing there with an opening between them, being suddenly brought together without notice, evidence of a rule of company, requiring the giving of a signal when an engine was moved in its yards, is admissible, in connection with evidence that deceased knew of the manner in which switching was done, to show that he could reasonably presume the rule would not be violated; there being no

evidence that signals were not customarily given.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 397.*]

8. RAILROADS (§ 397*) — INJURY TO PERSON CROSSING TRACKS—NEGLIGENCE—EVIDENCE —RULES OF COMPANY.

Such rule was also admissible as tending to show the railroad company deemed it necessary under such circumstances to give signals, and required them to be given.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 397.*]

9. TRIAL (§ 41*)—APPEAL AND ERROR (§ 970*) —RECEPTION OF EVIDENCE—EXCLUSION OF WITNESSES.

It is within the discretion of the trial court, its action under which is reviewable only for clear abuse of the discretion, to exclude the testimony of a witness who has violated the rule under which the witnesses had been placed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 101–105; Dec. Dig. § 41;* Appeal and Error, Dec. Dig. § 970.*]

10. DEATH (§ 99*) — DAMAGES — EXCESSIVE VERDICT.

Under evidence that deceased when killed was 48 years old, earning $150 a month, which he spent on his family, a verdict of $28,500, divided among eight persons, his widow, mother, and children, of ages varying from 1 year to 14 years, cannot be held excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Appeal from District Court, Maverick County; W. C. Douglas, Judge.

Action by Annie C. Pingenot and others against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiffs. Defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, Murray & Murray, Boggess & Davidson, and W. B. Teagarden, for appellant. Joseph Jones, Geo. M. Thurmond, and J. R. Sanford, for appellees.

FLY, J. This is a suit for damages accruing from the death of Ed. Pingenot, in Eagle Pass, Tex., on November 29, 1909, instituted by Annie C. Pingenot, widow of deceased, his mother, Alexis Pingenot, and his six minor children, Willie, Oscar, Adella, Frank, Alice, and Louisa, against appellant, alleging that Ed. Pingenot was crushed between two cars while he was endeavoring to cross a siding from his office to the freight depot of appellant, and that his death was caused by the negligence of appellant in moving its cars, at a crossing, without warning. The cause was tried by jury and resulted in a verdict for $28,500 in favor of appellees, apportioned as follows: Mrs. Annie C. Pingenot, the widow, $8,000; Mrs. Alexis Pingenot, the mother, $500; Willie E. Pingenot, boy, 14 years old, $1,772.45; Oscar E. Pingenot, boy, 12 years old, $2,278.45; Adella R. Pingenot, girl, 10 years old, $2,784.75; Frank E. Pingenot, boy, 7 years old, $3,797.-40; Alice E. Pingenot, girl, 4 years of age, $4,303.75; Louisa A. Pingenot, girl, 1 year old, $5,063.20. From a judgment based on that verdict this appeal has been perfected.

Assignments of error from 1 to 5, inclusive, assail the sufficiency of the evidence to sustain the verdict, and in response thereto the statement of facts will be reviewed and the salient points culled therefrom.

On November 29, 1909, Ed. Pingenot, while crossing from his office, which was situated on the west side of the tracks of appellant, to the freight depot, was caught between two cars at a crossing generally used by the public with the knowledge and consent of appellant, and so crushed and mangled that he died in about two hours. The business of Ed. Pingenot required that he should go to the freight depot, and there was an opening between two cars at the crossing through which persons had been passing on the morning of the accident, which opening had been there for more than a day, and, while he was endeavoring to pass through the opening, without warning or notice of any kind, the cars were pushed together, catching deceased between the couplings. There were houses and other objects on the track in the direction of the engine that prevented Pingenot from seeing the engine, and no noise was made that would attract the attention of any one who desired to cross the track. There was some contradiction as to the width of the opening between the cars; but all agreed that there was an opening, and that it was used a number of times by persons on the morning Pingenot was killed. The opening had been left long enough to constitute an invitation to persons to pass through over the customary crossing; that is, from Saturday until Monday. Deceased stated, at the time he was taken from between the cars, that he was trying to get through when he was caught. A witness for appellant testified that the movement was made to shove two cars to the south over the crossing and couple them to a lot of cars north of the crossing. Employés of appellant had passed through the opening where Pingenot was killed only a short time before, and the movement of the cars was made with full knowledge that the opening was there and that it was being used, on that day and other days, as a passway, and yet no warnings were given. There was no other feasible, practicable route for Pingenot to reach the freight depot. The doctor who attended deceased said he stated: "There was a small opening between the cars, and I started to pass through and got caught."

[1] C. F. Simmons, a switchman and brakeman in the service of appellant at the time, swore that the dying man, in answer to a charge of negligence made by Mrs. Pingenot to the witness, said: "It wasn't their fault; I took the chances of walking through." No one else testified to hearing any such statement, and it may or may not

have been credited by the jury; but, if it was believed to be true, it did not indicate contributory negligence upon the part of the deceased. Even if he believed that he was negligent in trying to pass between the cars, and that the employés were not negligent in springing the death trap on him, that could not alter the facts of the case, which clearly indicate gross negligence on the part of the employés. No case could be allowed to turn upon the statement made by a man in the throes and agonies of death, and especially in this case, where it appears that what deceased meant by "his fault" was that, if he had not tried to cross the track, he would not have been hurt. The jury, and not the deceased, were called upon to pass on the question of negligence. Railway v. Calvert, 11 Tex. Civ. App. 297, 32 S. W. 246; Inland & Seaboard Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270. In this case, however, there was evidence tending to contradict the testimony as to the dying declarations; but, if there had not been, the jury were authorized to reject the testimony. They are the exclusive judges of the credibility of witnesses and the weight to be given their testimony. The circumstances were clearly against the evidence given by the witness and contained statements that no one else heard, so far as is known. The claim that no one was called to dispute the statement of the witness is not sustained by the record, which shows that appellees offered to prove by Joe Williams that, when Mrs. Pingenot asked Pingenot why he went between the cars, he replied, "I didn't think there was any danger," and that this was all the statement he heard, and the testimony was objected to and excluded by the court. The witness was the sheriff of Maverick county and disinterested. Appellant cannot now, with much grace, claim that there was no "attempt made to explain or dispute it by any competent testimony."

[2, 3] The court did not err in refusing to allow appellant to charge the deceased with embezzlement and to proceed to try that issue. If courts could be led off on such collateral issues, time would be uselessly spent, the true issues obscured, and the enforcement of the demands of justice lost sight of in a multiplicity of issues that would amount to nothing if sifted to the bottom. However, the court did permit Galbraith and Whitaker to testify that deceased at the time of his death had about $15,000 in Mexican money belonging to Waters-Pierce Oil Company for which he had not accounted. This was in effect the same testimony that was offered from another witness, and appellant has no cause of complaint. The court evidently thought there should be some limit to such evidence.

[4] Appellant contends, as herein stated, that the testimony as to the $7,500 collected by deceased for Waters-Pierce Oil Company and not accounted for by him should have gone before the jury by the mouth of three witnesses instead of two, and yet in a succeeding assignment of error complains that the jury discussed it in a different way from that in which it thought the matter should be viewed. It cannot be surprising that the jury should have been at a loss to determine the exact bearing of the testimony about the money and "should have wondered if the widow would have to pay it." The foreman swore that he told the jurors that it made no difference; they could not consider it. When some one raised the question of what the attorneys would get, the foreman told them that they had nothing to do with that, and so it was said in regard to a mortgage on the home. All the jurors questioned testified that they were not influenced in their verdict by the conversation about the matters mentioned. We do not think the district judge abused the discretion vested in him by statute in regard to granting new trials on the ground of misconduct of the jury, and, in the absence of such abuse of discretion, this court will not disturb his action. Foley v. Northrup, 47 Tex. Civ. App. 277, 105 S. W. 229. The fact that eleven of the jurors at one time insisted on a verdict of $38,000 cannot be used with any force as an argument that the jurymen were influenced, to the detriment of appellant, by the matters mentioned, because they reduced their verdict $10,000 after hearing those matters discussed. If verdicts are to be set aside on account of the unfounded vagaries and impertinent conversation of jurors, none would be safe, and every trial would be followed by an arraignment and trial of the jury. The statute under which jurors are permitted to detail every trivial act and idle word in the jury room is an insatiate consumer of time and patience of courts and a prolific breeder of trouble; its only saving clause being the investiture of the trial judge with discretion in the granting of new trials on the ground of improper conduct of the jury. This court will not interfere with that discretion when soundly and reasonably exercised.

The eighth assignment of error is overruled, because we do not think the charge is upon the weight of the evidence, as claimed by appellant. Each fact to be ascertained was left to the determination of the jury.

[5, 6] The cars were left standing at a place customarily used by vehicles and pedestrians for crossing to the depot, which was surrounded by tracks, from Saturday until Monday, with an opening between two of them wide enough to constitute an invitation to persons walking to enter therein, and it was negligence for appellant to suddenly close the opening without signal by whistle or bell. Appellant set a deadly trap and without warning sprung it and caught and killed Edward Pingenot. The statute may not have required the whistle to be

blown under the circumstances of this case; but a just regard for the rights of men loudly demanded it, and a failure to give the signal was an evidence of a disregard for the safety of those attempting to pass through the opening. The court did not err in permitting appellees to prove that no whistle was sounded, not as constituting statutory negligence, but as a circumstance to be weighed by the jury in arriving at a conclusion as to negligence or not. If the testimony had been inadmissible, its admission could not benefit appellant because the assignment is not supported by a proper bill of exceptions.

The special charge, seeking to withdraw the evidence as to whether the bell was rung or whistle blown before the opening between the cars was closed, was properly denied. It was alleged that the opening was at a crossing, and that the cars were moved without warning, and evidence had been introduced to sustain the allegation, and it would have been error to have withdrawn that circumstance from the jury. Appellant seems to labor under the apprehension that no circumstances can arise under which a failure to give signals of the approach of a train would be negligence, except in those cases required by the statute. That position is untenable. The issue as to the failure of appellant to give signals of an intention to move the cars constituting negligence was a question of fact to go before the jury. The failure to give the signals required by law at crossings is negligence per se and can be so declared by the court; in other cases the matter is one for the jury. Railway v. Gray, 65 Tex. 32; Railway v. Thomas, 87 Tex. 282, 28 S. W. 343; Railway v. Shoemaker, 98 Tex. 455, 84 S. W. 1049; Railway v. Saunders, 101 Tex. 255, 106 S. W. 321, 14 L. R. A. (N. S.) 998.

[7, 8] Appellant objected to the rules governing the employés of appellant in its yards, in regard to the giving of signals. The rules introduced in evidence required the giving of signals when an engine was moved, and it was alleged by appellant that the deceased had full knowledge of the manner in which switching was done, and there was no evidence that signals were not customarily given, and the rule was pertinent to show that deceased could reasonably presume that it would not be violated. The rule was also admissible as tending to show that the railway company deemed it necessary, under such circumstances, to give signals and required them to be given.

The twelfth assignment of error is without merit and is overruled. The charge, when read in connection with other portions of the charge and special charges asked by appellant and given, and even when taken alone, could not have misled the jury.

[9] Neither is the thirteenth assignment

of error well taken. The witness whose testimony was rejected had violated the rule under which the witnesses had been placed, and it was within the discretion of the court to exclude the testimony. The action of the trial judge in such instances will not be revised except in a clear case of abuse of the discretion. Phillips v. Edelstein, 2 Willson, Civ. Cas. Ct. App. § 452.

[10] It appeared from the facts that deceased was 48 years of age when he was killed, and that he was earning at least $150 a month, which he spent on his family. We are not disposed to hold that a verdict of $28,500, to be divided among the eight persons, was excessive. The probabilities are that each one would have received more from the deceased than was allotted to him or her. Considering each sum allowed to each appellee, it does not appear to be excessive. It may be unfortunate for appellant that the size of the family was such as to preclude any thought of race suicide and measures up to the Rooseveltian standard; but under the facts of this case we would not be justified in holding that the life of Edward Pingenot was not worth to the mother, the wife, and the six minor children the sum given them by the jury.

The judgment is affirmed.