**SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, et al., Appellants,**

v.

**Carlos LUNA, Sr., et al., Appellees.**

No. 13–84–214–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 19, 1985.

Rehearing Denied April 10, 1986.

W.T. Womble, Crain, Caton, James & Womble, Houston, for appellants.

Ernest H. Cannon, Thomas M. Stanley, Houston, for appellees.

Before NYE, C.J., and BENAVIDES and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

This is a suit for damages for injuries sustained in a railroad crossing collision. Appellees, Carlos R. Luna, Sr., and Janie Rivera Luna, individually and as representatives of the estate of Christopher James Luna and as parents and next friends of Becky Ann Luna, Carlos R. Luna, Jr. and Laura Ann Luna, filed suit against appellant Southern Pacific Transportation Company (sometimes referred to herein as "the Railroad Company," the "railroad" or "appellant company") and its engineer J.H. Lee alleging negligence and gross negligence.

Trial was to the jury which, in answer to specific issues, found:

(1) that the railway company was negligent in failing to issue speed restrictions for the crossing where the collision occurred prior to installation of the proposed automatic signals and that such negligence was a proximate cause of the collision;

(2) that Southern Pacific was negligent in the manner in which its train crew operated the train with respect to the failure to reduce the train's speed by application of the train's brakes or throttle and that such negligence was a proximate cause of the collision; and

(3) that the failure of the railway company to have automatic signal lights in operation was negligence and a proximate cause of the collision.

The jury found that Carlos R. Luna, Sr., and Southern Pacific were each 50 per cent negligent, but the jury also found that the conduct of Southern Pacific constituted reckless, wanton and grossly negligent conduct.

Based on the jury verdict, the trial judge entered the following judgment:

(1) that Carlos Luna, Sr., recover $25,366.00;

(2) that Janie Luna recover $251,468.50;

(3) that Becky Ann Luna recover $66,000.00;

(4) that Carlos Luna, Jr., recover $5,000.00 and

(5) that Laura Ann Luna recover $2,500.00.

Each of these amounts was entered against appellant Southern Pacific and J.H. Lee, jointly and severally.

Against Southern Pacific alone, the trial judge assessed the following:

(1) that Janie Luna recover $634,155.00;

(2) that Becky Ann Luna recover $283,950.00;

(3) that Carlos Luna, Jr., recover $18,930.00; and

(4) that Laura Ann Luna recover $9,465.00.

After the above judgment was entered, the trial court granted a motion to sever the causes of action of Laura Ann Luna and granted her motion for partial new trial. As to the other parties, the original judgment was left undisturbed.

This accident occurred on November 28, 1981, when the car in which appellees were traveling was struck by a Southern Pacific train. The accident occurred in East Bernard, Texas, where Ray Street crosses the Southern Pacific tracks. Appellee Carlos Luna, Sr., was driving his 1978 Mercury Bobcat automobile south on Ray; the train was westbound. The Ray Street crossing was unprotected by automatic warning devices at the time of the accident; however, the crossing had been previously selected for protection by planned installation of automatic crossing guards.

In their first and second points of error, appellants complain of the jury's affirmative answer to the following special issue:

### SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that the railway company, acting through its agents, servants and employees, was negligent in failing to issue speed restrictions for the crossing in question prior to the installation of the automatic signals?

Answer "yes" or "no."

Answer: <u>Yes</u>

Appellants allege:

(1) there is no evidence to support the jury's answer;

(2) as a matter of law, the railway company has no legal duty to issue speed restrictions;

(3) as a matter of law, the failure to issue speed restrictions was not a proximate cause of the collision;

(4) there is insufficient evidence to support the jury's answer; and

(5) the jury's answer is against the great weight and preponderance of the evidence.

■ In Texas, there is no state statute limiting the speed of trains at crossings. Rather, the *statutory* duty of the railroad is to sound a whistle and bell, TEX.REV. CIV.STAT.ANN. art. 6371 (Vernon Supp. 1984), equip the locomotive with a headlight, TEX.REV.CIV.STAT.ANN. art. 6372 (Vernon 1926), and erect a sign at the crossing, TEX.REV.CIV.ANN. art. 6370 (Vernon 1926). *See Missouri Pacific Railroad Co. v. Shaw*, 620 S.W.2d 161, 163 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The railroad also has a *common law* duty to use extraordinary means to warn travelers at extra-hazardous crossings. *Osuna v. Southern Pacific Railroad Co.*, 641 S.W.2d 229, 230 (Tex.1982). The Luna family seeks to impose an additional common law duty on the railroad to issue speed restrictions to its crews. The Lunas argue that there was a recognized need to install signals because of the amount of both train and vehicular traffic, and that, because other cities along the track had imposed speed restrictions, the railroad should have done so on its own accord for East Bernard. In *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627, 631 (Tex.1976), the court wrote, "any plaintiff must prove the existence and violation of a legal duty owed to him by the defendant to establish tort liability." Southern Pacific argues there is no legal duty to impose speed restrictions. In *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983), the Court wrote:

[F]actors which should be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding

against the injury and consequences of placing that burden on the employer. 668 S.W.2d at 309.

The Supreme Court then set out the proper test for determining whether a defendant is negligent.

> "Two questions are presented. First, does the law impose any duty upon Otis under the evidence as developed? Secondly, does such evidence give rise to any genuine issues of material fact?"

Id. at 308.

■ The first question, whether there is a duty, is a matter of law for the court. As stated by the Court, "what *we* must decide is if changing social standards and increasing complexities of human relationships in today's society justify imposing a duty upon an employer to act reasonably...." (emphasis added.) *Id.* at 310. *See also Id.* at 311 ("the standard of duty that *we* now adopt") (emphasis added).

We do not believe the majority in *Otis* would quarrel with the general proposition stated by the dissenting justices that:

> In every case, the duty issue is the threshold inquiry; it must be determined before the issue of the defendant's negligent conduct can be reached or can be resolved. ... Whether a duty exists in a given case is a question of law to be determined by reference to the body of statutes, rules, and precedents that make up the law and must be determined only by the court. The jury is asked to determine breach and proximate cause only after the court has concluded that a duty exists.

*Id.* at 312. We conclude that the question of whether the railroad owed a specific duty to plaintiffs to issue speed restrictions is a matter of law to be determined by the court.

■ Implicit in the trial court's submission of Special Issue No. 5 is a determination that there is a duty upon the railroad to issue speed restrictions. We are unable to find any specific reference in the case law to such a duty, and there is no general statute addressing the issue of train speed limits; however, we believe that the issue of speed restrictions is encompassed within a recognized and established duty on the part of the railroad; that is the duty to operate its trains in a reasonable and prudent manner with due regard for the safety of the traveling public. In short, a railway company must act just as any other railway company, i.e., with ordinary care. *Missouri, K. & T. Railway Co. v. Thomas*, 87 Tex. 282, 28 S.W. 343, 344 (1894); *Southern Pacific Transportation Co. v. Peralez*, 546 S.W.2d 88, 94 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

We therefore reject the argument of the railroad that, as a matter of law, it has no legal duty to issue speed restrictions. Just as with any other company, the corporate policy of a railroad, as manifested by its acts or as in this instance its failure to act, is subject to review by a jury to determine whether that conduct meets the standard of ordinary care. The railroad enjoys no immunity from a jury's review of its conduct.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

At trial there was evidence to show that over a thousand cars crossed the tracks daily and that there were approximately ten westbound and ten eastbound trains each day. The track was the main line between Houston and the West Coast. It was shown that other cities nearby had imposed speed restrictions (20, 25 and 30 mph) upon the railroad, but that East Bernard was unincorporated and, therefore, had no authority to restrict the speed of appellant's trains. There was also evidence that the railroad had a general speed limit of 55 mph for freight trains and 70 mph for passenger trains. There was evidence that

for quite some time prior to the accident the railroad had agreed with the State to install automatic crossing devices at the Ray Street crossing. These automatic warning devices were agreed to be placed at the crossing by the Railroad at the expense of the State, and this determination was made two years before the accident. The criteria for this selection was based on the number of trains per day, the number of crossings and the number of accidents in the last five years. A one page directive to the crew from the traffic division would have triggered the speed restriction.

■ We conclude that the above evidence is sufficient to support the jury's finding that the railroad was negligent in failing to issue speed restrictions. We therefore overrule those parts of appellant's points of error one and two complaining of the legal and factual sufficiency of the evidence to support the jury's answer to Special Issue No. 5.

By subparts in points of error one and two, appellants also allege the evidence is legally and factually insufficient to support the jury's findings that the failure to issue speed restrictions was a proximate cause of the collision.

At trial, there was evidence to indicate that other towns along the track had imposed speed restrictions upon trains passing through their city limits. In the light most favorable to the verdict, the evidence suggests that these cities limited train speed to 20, 25 and 30 miles an hour.

In *Stanley v. Southern Pacific Co.*, 466 S.W.2d 548 (Tex.1971), the Supreme Court discussed the cause-in-fact element of proximate cause and concluded that a delay of even a few seconds might have averted the collision. *Id.* at 554. This "few precious seconds" analysis was also used in *Ford v. Panhandle & Santa Fe Railway Co.*, 151 Tex. 538, 252 S.W.2d 561, 565 (1952), where the court wrote that the jury could reasonably conclude that the driver only needed to travel three or four feet to reach safety.

In the instant case, the engineer testified that he was operating the train at approxi-

mately 45 miles per hour. Forty-five miles per hour equals 66 feet per second. Had the train been traveling at thirty miles per hour because of a company-imposed speed limit, the train would have been traveling 45 feet per second; a further reduction in train speed to 20 miles per hour through East Bernard would have resulted in a velocity of only 29 1/3 feet per second.

■ The plaintiffs' car was struck in the front quarter panel as it was moving across the track. We cannot say that the jury could not have reasonably concluded that the failure to have speed restrictions was a proximate cause of the collision in that safety was only a car length away. Appellant's points of error alleging there is no evidence to support the answer to the proximate cause inquiry are overruled.

■ Concerning the factual sufficiency of the same evidence, we have searched the record, and are unable to find any evidence of either what the speed limit should have been or what point along the line the train should have reduced its velocity. Furthermore, though we know that the vehicle involved was a compact car, there is no evidence of its length; therefore, we are unable to determine how many seconds it would have taken the vehicle to clear the track. In both *Stanley* and *Ford* there was evidence of the distance of the train from the crossing. When there is evidence of the velocity of the train and automobile and evidence of their respective distances from the crossing, it is possible to calculate with some degree of certainty that time needed by an automobile to clear the crossing. The jury may then consider that time in determining whether the accident might have been avoided.

The instant case is distinguishable from *Ford* and *Stanley* in at least two respects. As stated, we have no evidence indicating where the train should have slowed down, and also, we are not concerned with the actual speed at which the train was traveling, but, rather, the speed at which the train should have been traveling.

■ We do not believe the cause-in-fact element of proximate cause is so elastic or expansive as to permit the jury to speculate that, had the train been traveling slower, it would not have been where it was, and the accident never would have occurred. Such speculation is too nebulous.

However, the engineer testified that when he was 150 to 200 feet from the crossing, he was able to see Mr. Luna looking into the back seat [1] of his automobile, and he, the engineer, realized that the Luna vehicle was not going to stop. The engineer also testified that to conserve fuel, he was restricted to a maximum speed of 45 miles per hour and that he was traveling at that speed, or slightly less, at the time of the collision. Other testimony placed the speed at 45 mph, and still other testimony was that the speed was greater.

Taking the higher estimate of 200 feet as the distance at which the engineer saw the automobile, the jury could easily make the following calculations:

| Train Speed in MPH | Seconds to Collision |
| --- | --- |
| 45 | 3.0 |
| 30 | 4.5 |
| 25 | 5.4 |
| 20 | 6.8 |

Mr. Luna testified that he was traveling 5 miles an hour as he crossed the tracks. Five miles an hour is 7 ⅓ feet per second.

Though there was no direct evidence concerning the length of the Luna's vehicle, we believe that the jury could reasonably conclude that, had the train been traveling 20 mph, the Lunas would obviously have made it safely across the tracks, and that at either 25 mph or 30 mph, the Lunas could have been spared. The question is close, but we believe there is sufficient evidence to support the jury's affirmative answer to the proximate cause issue. Appellant's points of error one and two are overruled.

Special Issue No. 7 was submitted to the jury and answered as follows:

On the occasion in question, was Southern Pacific negligent in the manner which its train crew operated the train with respect to: (a) the speed of the train; or (b) the failure to reduce the train's speed by application of the train's brakes or throttle.

SPECIAL ISSUE NO. 7

Answer "Yes" or "No" on each line in Column 1. If any of your answers in Column 1 are "Yes", was any such negligence a proximate cause of the occurrence in question? Answer "Yes" or "No" on the corresponding line of Column 2.

| | Column 1 Negligence | Column 2 Proximate Cause |
| --- | --- | --- |
| (a) Train Speed | No | |
| (b) Reduction of Speed | Yes | Yes |

In their third and fourth points of error, appellants allege the evidence is legally (3(A)) and factually insufficient (4(A)) to support the jury's answers; appellants also renew complaints that there was no duty (3(D)) to reduce train speed and that any failure to reduce speed was not a proximate cause of the collision (3(E)).

■ We overrule appellant's no duty and proximate cause arguments for the reasons stated in our disposition of points of error one and two. Concerning the sufficiency of the evidence, we have reviewed the record and find sufficient evidence to support the jury's answer. The engineer testified that he never reduced the throttle or applied the brakes until after the collision. It was within the province of the jury to conclude this was negligence and a proximate cause of the collision. There was evidence from the brakeman that the use of the emergency brake could have slowed down the railroad train. The jury was not bound by the engineer's testimony that application of either the brakes or throttle would not have slowed the train 150 feet from the crossing. The no evidence and insufficient evidence complaints are overruled.

---

1. Mr. Luna denied that he did so.

Appellants also allege that the jury's answer to Special Issue No. 7(b) is immaterial because that issue is duplicitous of Special Issue No. 7(a). Appellants are correct that submission of duplicitous issues is error, *Holmes v. J.C. Penney Co.,* 382 S.W.2d 472, 473 (Tex.1964), but that error does not necessarily require reversal. *Id.* We are at a loss to understand how duplicitous submission in and of itself would render a finding immaterial. It would seem that the very reason that duplicitous submissions should be avoided is because each finding is material and would support a judgment.

In any event, the submission of "brakes" and "speed" was not a double submission. *Southern Pacific v. Stanley,* 473 S.W.2d 52, 60 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). Appellants apparently complain because of the similarity of the phrases "train speed" and "reduction of speed." A common sense reading of the special issue itself reveals that reduction of speed was "by application of the train's brakes or throttle." Point of error 3(B) complaining of duplicitous submission is overruled.

Point of error 3(C) is a complaint that the finding in issue 7(b) is immaterial because it is duplicitous of the discovered peril issue, Special Issue No. 11, which appellant company alleges was answered in its favor.

Special Issue No. 11 was submitted to the jury and answered as follows:

### SPECIAL ISSUE NO. 11

Do you find that:

A. As the train approached the crossing, Carlos Luna Sr. was in peril;

B. The engine crew discovered the peril of Carlos Luna, Sr.;

C. The engine crew realized that Carlos Luna, Sr. probably would not extricate himself;

D. Such discovery and realization were in time for the engine crew to have avoided the occurrence in question by ordinary care in the use of the means available to them, consistent with their own safety and the safety of the train; and

E. After such discovery and realization the engine crew failed to use the means available to them with ordinary care to avoid the occurrence in question?

If you find that every part of this question has been established by a preponderance of the evidence, answer "Yes". Otherwise, answer "No".

Answer: <u>No</u>

In *French v. Grigsby,* 571 S.W.2d 867 (Tex.1978), the Supreme Court of Texas held that the doctrine of discovered peril has been abolished as either an issue or instruction. Although it was error for the trial court to submit Special Issue No. 11, the defendants' only objections were that there was no evidence or insufficient evidence to support its submission, not that the issue was duplicitous. An objection not presented to the trial court is considered waived. TEX.R.CIV.P. 272. A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. TEX.R.CIV.P. 274. Appellant's point of error 3(C), as well as all other parts of points of error three and four, are overruled.

In its fifth and sixth points of error, appellant company complains of the jury's findings that its delay in installing automatic crossing guards was negligence and a proximate cause of the collision. Appellant alleges there is no evidence to support the jury's answers, that the evidence is insufficient, and that Southern Pacific had no duty to install signals.

At trial there was evidence to show that under a government program, the railroad is reimbursed for the costs of installing warning signals. The railroad may not install signals at a public crossing without approval from the state, but the evidence showed that the Ray Street crossing had been approved for signalization and the railroad had been requested to begin the process of designing the crossing guards and assembling the materials necessary for construction.

Informal notice that the Ray Street crossing had been selected was given to the railroad by letter of November 5, 1979. Approval or authorization for the railroad to proceed was given by a letter of January 1, 1980. The accident occurred on November 28, 1981. There was evidence that the state requested Southern Pacific to "Please expedite your scheduling" by letter of August 7, 1981. Actual installation of the signals took approximately three and one-half weeks.

Special Issues Nos. 8, 9, and 10 were submitted to the jury and answered as follows:

### SPECIAL ISSUE NO. 8

On the occasion in question was the railroad crossing in question extrahazardous?

A railroad crossing is "extrahazardous" when, because of surrounding conditions, it is so dangerous that persons using ordinary care cannot pass over it in safety without some warning other than the usual cross-arm sign.

Answer "Yes" or "No".

Answer: <u>No</u>

### SPECIAL ISSUE NO. 9

Do you find that the failure of the railway company to have automatic signal lights in operation was negligence?

Answer "Yes" or "No".

Answer: <u>Yes</u>

If you have answered Special Issue No. 9 "Yes", and only in that event, then answer:

### SPECIAL ISSUE NO. 10

Was such negligence a proximate cause of the occurrence in question?

Answer: "Yes" or "No".

Answer: <u>Yes</u>

These special issues resemble the method suggested in Texas Pattern Jury Charges Vol. 1 for submitting the issue of an extra-hazardous crossing, but differ with the noticeable absence of a "hook," making the jury's consideration of issues nine and ten conditional upon an affirmative answer to Special Issue No. 8.

In *Osuna*, 641 S.W.2d at 230, our Supreme Court wrote: "It is well established in this state that it is only at extra-hazardous crossings that the railroad has a duty to use extraordinary means to warn travelers along the road."

 We, therefore, sustain appellant company's point of error 5(B) and hold as a matter of law that the railroad company had no duty to install automatic crossing guards or automatic signal lights.

Concerning Special Issues Nos. 9 and 10, appellees argue that even though the crossing may not have been extra-hazardous and Southern Pacific, therefore, had no duty to install crossing guards, that once Southern Pacific undertook to install automatic warning devices, it had a duty to proceed with ordinary care. Appellees argue that the delay in installing the crossing guards was negligence citing *Colonial Savings Association v. Taylor*, 544 S.W.2d 116 (Tex.1976), where the court wrote that the rule stated in the Restatement (Second) of Torts § 323 (1965) has long been recognized in Texas.

As quoted by the Supreme Court in *Colonial Savings*, the rule is:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) His failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Id.* at 120.

 We believe that appellees are unable to avail themselves of the duty referred to in *Colonial Savings* for several reasons. First, absent a finding that the crossing was extra-hazardous, crossing guards were not *necessary*. *Osuna*, 641

S.W.2d at 230. Second and most important, here, as in *Colonial Savings*, the alleged negligence of the railroad cannot be said to have *increased* the risk of harm. As stated in *Missouri Pacific Railroad Co. v. Cooper*, 563 S.W.2d 233, 235 (Tex.1978), every railroad crossing is dangerous. Though installation of automatic warning signals may very well *decrease* that danger, we do not believe that failure to do so can be said to *increase* an existing danger.

■ Thus, appellant company cannot be liable for the Lunas' damages unless the Lunas were injured because they relied upon Southern Pacific to act diligently. There is no evidence to support such a theory.

We hold that the trial court erred in overruling Southern Pacific's motion to disregard the jury's answers to Special Issues Nos. 9 and 10, because Southern Pacific had no duty to install automatic signals. Point of error 5(B) is sustained.

Appellants' point of error seven is as follows:

POINT OF ERROR SEVEN

THE TRIAL COURT ERRED IN OVERRULING SOUTHERN PACIFIC'S MOTION FOR NEW TRIAL, BASED UPON IRRECONCILABLE CONFLICTS IN THE JURY'S ANSWERS TO SPECIAL ISSUES, AS FOLLOWS:
(A) THE JURY'S ANSWER TO SPECIAL ISSUE NO. 5, FINDING THE RAILWAY COMPANY NEGLIGENT IN FAILING TO ISSUE SPEED RESTRICTIONS, CONFLICTS WITH THE JURY'S ANSWER TO SPECIAL ISSUE NO. 7(a), FINDING THAT SOUTHERN PACIFIC WAS NOT NEGLIGENT IN THE MANNER IN WHICH ITS TRAIN CREW OPERATED THE TRAIN WITH RESPECT TO THE SPEED OF THE TRAIN;
(B) THE JURY'S ANSWER TO SPECIAL ISSUE NO. 5, FINDING THE RAILWAY COMPANY NEGLIGENT IN FAILING TO ISSUE SPEED RESTRICTIONS, CONFLICTS WITH THE JURY'S ANSWER TO SPECIAL ISSUE NO. 8, FINDING THAT THE RAILROAD CROSSING IN QUESTION WAS NOT EXTRA HAZARDOUS;
(C) THE JURY'S ANSWER TO SPECIAL ISSUE NO. 7(a), FINDING THAT SOUTHERN PACIFIC WAS NOT NEGLIGENT IN THE MANNER IN WHICH ITS TRAIN CREW OPERATED THE TRAIN WITH RESPECT TO THE SPEED OF THE TRAIN, CONFLICTS WITH THE JURY'S ANSWER TO SPECIAL ISSUES NO. 7(b) WHICH FOUND THAT SOUTHERN PACIFIC WAS NEGLIGENT IN FAILING TO REDUCE THE TRAIN'S SPEED;
(D) THE JURY'S ANSWER TO SPECIAL ISSUE NO. 9, WHICH FOUND THAT THE RAILWAY COMPANY WAS NEGLIGENT IN FAILING TO HAVE AUTOMATIC SIGNAL LIGHTS IN OPERATION, CONFLICTS WITH THE ANSWER TO SPECIAL ISSUE NO. 8, FINDING THAT THE RAILROAD CROSSING IN QUESTION WAS NOT EXTRA HAZARDOUS;
(E) THE JURY'S ANSWER TO SPECIAL ISSUE NO. 7(b), WHICH FOUND THAT SOUTHERN PACIFIC WAS NEGLIGENT IN FAILING TO REDUCE THE TRAIN'S SPEED, CONFLICTS WITH THE JURY'S ANSWER TO SPECIAL ISSUE NO. 11, WHICH SUBMITTED THE ISSUE OF DISCOVERED PERIL, AND WHICH WAS ANSWERED FAVORABLY TO THE RAILWAY COMPANY.

■ In the case of an alleged conflict, the test for fatality is: taking into consideration all of the rest of the verdict, if one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. *Little Rock Furniture Manufacturing Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985 (1949), *qualified by Bradford v. Arhelger*, 161 Tex. 427, 340 S.W.2d 772 (1960). Also, "[w]here the jury findings are reasonably susceptible of two constructions, one of which would reconcile the findings in

favor of the judgment, such reconciliation is mandatory in favor of the judgment that was rendered on the jury verdict." *Godde v. Wood,* 509 S.W.2d 435, 442 (Tex.Civ.App. —Corpus Christi 1974, writ ref'd n.r.e.).

■ A "no" answer by a jury to a special issue means, in law, that the party with the burden of proof on that issue has failed to carry its burden. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex. 1966); *Lovato v. Ranger Insurance Company,* 597 S.W.2d 34 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

With regard to appellants' point of error 7(A) we point out the following:

Special Issue No. 5 asked the jury:

Do you find from a preponderance of the evidence that the Railway Company, acting through its agents, servants, and employees, was negligent in failing to issue speed restrictions for the crossing in question prior to the installation of the automatic signals?

The jury responded affirmatively to this question and then found, in Special Issue No. 6, that this negligence was a proximate cause of the occurrence in question.

Special Issue No. 7 and the jury's answers thereto read:

On the occasion in question, was Southern Pacific negligent in the manner which its train crew operated the train with respect to: (a) the speed of the train; or (b) the failure to reduce the train's speed by application of the train's brakes or throttle?

SPECIAL ISSUE NO. 7

Answer "Yes" or "No" on each line in Column 1. If any of your answers in Column 1 are "Yes", was any such negligence a proximate cause of the occurrence in question? Answer "Yes" or "No" on the corresponding line of Column 2.

| | Column 1 Negligence | Column 2 Proximate Cause |
|---|---|---|
| (a) Train Speed | No | |
| (b) Reduction of Speed | Yes | Yes |

Appellants assert that a fatal conflict exists between: 1) the jury's finding that the failure to issue speed restrictions was a proximate cause of the accident; and 2) the additional finding that the speed the train was actually traveling was not negligent.

■ We can perceive of no interpretation of the jury's answer to Special Issue No. 7(a), other than as a finding that appellees (trial plaintiffs) failed to meet their burden of establishing that the speed the train was actually moving at the time of the accident constituted negligence.

■ Appellees would contend on appeal that "the jury may well have failed to find the crew negligent in going 45 miles per hour because it was following the speed limit issued by the railroad and had no reason for suspecting that speed not to be safe." We note that Special Issue No. 7 does not inquire as to whether or not the crew was negligent; rather, it asks whether Southern Pacific was negligent in the manner the crew operated the train. The very thrust of the question inquires into whether or not Southern Pacific was responsible for the actions of its crew. The train crew, irrespective of the existence of any company speed regulations, would have a duty to operate the train with care and caution, such as reasonably prudent men would exercise to avoid colliding with persons passing over the tracks. *See Missouri Pacific Railroad Co. v. Shaw,* 620 S.W.2d 161 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Texas & New Orleans Railroad Co. v. Blake,* 175 S.W.2d 683 (Tex.Civ.App.—Fort Worth 1943, writ ref'd); *see also Texas & New Orleans Railroad Co. v. Day,* 159 Tex. 101, 316 S.W.2d 402 (1958).

Specifically, if the company had a duty to issue speed restrictions at the crossing in issue, as found by the jury's answer to Special Issue No. 5, then the failure to issue these restrictions would have a direct impact on any negligence occasioned in the operation of a train at an unsafe speed. A finding by the jury that the failure of the company to issue speed restrictions must,

at least, imply a finding that the train was being operated at an unsafe (negligent) speed in order for such a failure to be a proximate cause of any injury occasioned thereby. Such an implied finding necessarily conflicts with a finding, as a matter of law, that appellees failed to meet their burden of proof in establishing that the train was being operated at an unsafe speed. Appellant company's seventh point of error as set out in 7(A) is sustained and requires reversal.

As to point of error 7(B), we see no conflict between the answers concerning the failure to issue speed restrictions and the finding that the railroad crossing was not extra-hazardous. The duty at an extra-hazardous crossing is the duty to warn, *Osuna*, 641 S.W.2d at 230; the duty to issue speed restrictions is part of the duty to operate the railroad with ordinary care.

As to point of error 7(C), we see no conflict between Special Issues Nos. 7(a) and 7(b). We believe that the two issues may be reconciled and construed in favor of the judgment to submit the issues of speed and brakes.

As to point of error 7(D), we see no conflict between the failure of the jury to find the crossing extra-hazardous and its finding that the railroad company was negligent in failing to install automatic signals, because, again, two separate duties were involved. Special Issues Nos. 9 and 10 were not submitted only as part of the railroad's duty to warn at an extra-hazardous crossing, but rather, in light of the judgment, those issues were submitted as part of the duty plaintiffs sought to impose on Southern Pacific to use diligence in installing the automatic signal devices. This

was a theory of recovery separate and apart from the duty to warn. Regardless, inasmuch as we have held that there was no duty on the railroad to install automatic signals, the answers would not require a different verdict.

Finally, in point of error 7(E) which concerns the alleged conflict between the jury's finding that the train crew was negligent in failing to reduce the speed of the train by application of the train's brakes or throttle and the jury's answer to Special Issue No. 11, we see no conflict.

Because the judgment would allow punitive damages against the appellant company under one set of answers and not allow punitive damages under another answer, a fatal conflict exists which requires a reversal.[2]

In appellants' points of error numbered 8 through 11 and 13 through 19, the railroad company complains of the award of damages or the apportionment of damages. Having previously ruled on all of appellants' controlling issues which require a reversal and new trial, it is not necessary for us to address these or the remaining issues. TEX.R.CIV.P. 451.

The judgment of the trial court is REVERSED and REMANDED for new trial.

---

2. The award of gross negligence damages against appellant company was presented by appellees based upon the jury's findings of the appellant company's negligent failure to issue speed restrictions and failure to install automatic signals which were supported by the jury findings on gross negligence and affirmative findings of vice principal ratification of such gross negligence (our opinion found no duty on the appellant company to install automatic signals and there is no claim made for punitive damages based upon the negligent speed reduction findings). The "speed restriction" findings would support a judgment for punitive damages. However, the failure of the appellees to meet their burden of proof in securing an affirmative finding to Special Issue No. 7(a) results in a different and fatally conflicting judgment that would not allow punitive damages as not being proximately caused by the failure to issue speed restrictions.