**Charles RILEY and wife, Helen Riley, Plaintiffs,**

**v.**

**CHAMPION INTERNATIONAL CORPORATION, Defendant.**

No. 1:95–CV–790.

United States District Court,
E.D. Texas,
Beaumont Division

July 17, 1997.

Paul Gertz, Lawrence Germer, Lawrence Simmons, Germer & Gertz, Beaumont, for plaintiffs.

Ronald Secrest, Linda McCloud, Beck, Redden & Secrest, Houston, for defendant.

## ORDER ADOPTING IN PART AND OVERRULING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SCHELL, Chief Judge.

This matter is before the court on the Report and Recommendation of the United States Magistrate Judge Re: Defendant's August 22, 1996 Motion for Summary Judgment that was filed on May 23, 1997. Defendant filed objections on June 5, 1997. Plaintiffs filed objections on June 9, 1997. Upon consideration of the report and recommendation, the parties' objections, and the applicable law, the court is of the opinion that the Magistrate Judge's Report and Recommendation should be ADOPTED IN PART and OVERRULED IN PART.

*Adopted Portions*

The court adopts the analysis and conclusions of the report and recommendation as to the following issues: (1) the denial of Defendant's Motion for Summary Judgment with regard to Plaintiffs' breach of contract claim;[1] (2) the granting of Defendant's Motion for Summary Judgment with regard to Plaintiffs' claim of negligence under a premises liability theory;[2] and (3) the granting of Defendant's Motion for Summary Judgment with regard to Plaintiffs' claim of negligent misrepresentation.

*Overruled Portions*

 The court disagrees with portions of the Restatement (Second) of Torts § 323 analysis contained in the report and recommendation.[3] Section 323 provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Specifically, the court disagrees with the report's conclusion that Plaintiffs have failed to create a genuine issue of material fact as to the "increased risk of harm" alternative of § 323.[4] For purposes of the § 323 analysis, the court agrees with Plaintiffs' contention that it is the Lyme disease itself, not the

1. *See* Report and Recommendation of May 23, 1997 at 7–9. The court also adopts the Magistrate Judge's conclusion that the release of negligence provision is unenforceable because it fails to satisfy the fair-notice requirements of the express negligence doctrine and conspicuousness. *See id.* at 27–31.

2. *See id.* at 12–14.

3. *See id.* at 18–24 (discussing whether Defendant had an independent duty to use reasonable care arising from Texas common law as articulated in Section 323 of Restatement (Second) of Torts).

4. Plaintiffs present no summary judgment evidence that Riley either read or relied on Defendant's assumed duty to provide safety information. Moreover, regardless of whether Riley read the Commitment to Safety provision, there is no evidence he relied on it. *See* Dep. of Charles Riley at 210 (stating that Riley did not read the "base" contract until this lawsuit was filed, but failing to indicate whether Riley defined "base" contract to include the separate November 18, 1993 Commitment to Safety agreement when providing his response). Because Plaintiffs have not produced timely summary judgment evidence on the "reliance" alternative prong of § 323, they are relegated to proving "increased risk of harm" in order to recover under a theory of negligent performance of an assumed duty. Additionally, without some evidence of reliance, Plaintiffs cannot avoid summary judgment on their negligent misrepresentation claim.

actual tick bite, that constitutes the real harm here. Upon review of the relevant excerpts of Riley's deposition, the court finds that Plaintiffs have created a genuine issue of material fact as to whether Defendant's failure to provide Riley with safety information related to Lyme disease increased the risk or likelihood, not that he would necessarily contract the disease, but rather, of his developing a disabling, chronic Lyme infection.[5]

Because the court finds that a genuine issue of material fact exists as to whether Defendant negligently performed the undertaking to provide safety information,[6] Plaintiffs' claims for gross negligence, loss of consortium, loss of household services, and punitive damages are revived.

Accordingly, the court GRANTS Defendant's Motion for Summary Judgment as to Plaintiffs' negligence claims based on premises liability and misrepresentation and DENIES Defendant's Motion for Summary Judgment as to Plaintiffs' claims of breach of contract, negligent performance, gross negligence, loss of consortium, and loss of household services and Plaintiffs' claim for punitive damages.

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE RE: DEFENDANT'S AUGUST 22, 1996 MOTION FOR SUMMARY JUDGMENT

HINES, United States Magistrate Judge.

This case involves the novel assertion that a forest owner is liable for not warning an independently contracting, 30–year–veteran

logger that he might get bitten by a tick in the woods and thereafter contract Lyme disease. As is often the case with novel claims, plaintiffs take a scatter-gun approach to pleading their cause of action. The complaint alleges several variants of ordinary negligence, gross negligence, negligent misrepresentation, breach of a written "cut and haul" contract, loss of consortium and loss of services.

As one might anticipate, defendant vigorously asserts that all plaintiffs' efforts are in vain. This report addresses defendant's motion for summary judgment.[1] The analysis concludes that the motion should be denied as to the breach of contract claim because the contract does not preclude plaintiff's contention as a matter of law, and defendant fails to show absence of a genuine issue of material fact as to whether the parties intended to impose on defendant the obligation to warn as claimed by plaintiffs.

The analysis further concludes that the motion should be granted as to each negligence-based tort claim asserted by plaintiff, Charles Riley ("Riley"). Defendant, Champion International Corporation ("Champion"), as premises owner, owed to its invitees no duty of care regarding tick bites under the *ferae naturae* exception. Second, Riley cannot prevail on the bases of negligent performance of a contract or negligent performance of a voluntarily assumed duty because he cannot show that he either relied on Champion's alleged duty to warn him of Lyme-carrying ticks or that Champion alleged failure to provide such a warning increased the risk of harm. Fourth, Riley fails to show a

---

5. *See id.* at 192 & 203 (stating that Riley would have sought treatment earlier if he had known of the consequences and symptoms of Lyme disease).

6. Because negligent performance of a contract and negligent performance of an assumed duty merge analytically in that both require an extra-contractual duty to use reasonable care, the court will refer to both as simply negligent performance. See Report and Recommendation at 18 (citing § 323 as the source of a separate and independent duty to use reasonable care). "If there must first be a separate and independent basis for negligence liability, the concept of a second distinct cause of action for negligent performance of a contract is aimless. Succinctly, if a defendant is liable for negligence irrespective

of the contract, there is no apparent reason for a cumulative cause of action for negligent performance of the contract." *Id.*

1. The motion is referred to the undersigned United States Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); General Order 91–16 (E.D.Tex.1991) (standing referral order).

An original report and recommendation was filed on December 5, 1996. Upon consideration of plaintiffs' and defendant's objections, the original report was withdrawn, and the motion was reargued on January 29, 1997. The present report and recommendation supersedes the original.

genuine issue of material fact as to whether he relied on Champion's alleged misrepresentations, thus dooming his cause of action based on misrepresentation.

Champion's motion should also be granted as to plaintiff Helen Riley's loss of consortium and loss of services claim. First, as her claim is derivative to Charles Riley's claims of tortious conduct by Champion, it should be dismissed along with those claims. Second, Texas law does not permit a spouse to attach a derivative claim for loss of consortium or loss of services to a simple contract cause of action. Further, she is precluded from pursuing punitive damages because her injury is indirect and derivative.

## I. FACTUAL BACKGROUND; NATURE OF SUIT

Plaintiff Charles Riley operated a logging contractor business as sole proprietor in forests of east Texas for over 30 years. Pls.' Original Compl. at 2. Beginning in 1989, he worked exclusively for Champion as an independent contractor. *Id.* Between 1989 and 1994, Riley entered into numerous written "cut and haul" contracts with Champion. Riley agreed to enter onto land owned or controlled by defendant and cut, haul, load and deliver timber. *Id.*

Riley entered into a "cut and haul" contract in November 1993, covering the period from December 3, 1993 to October 31, 1994. Def.'s Ex. 2 to Riley Dep. Supp. Summ. J. Riley alleges that while harvesting timber from Champion-owned property under this contract he acquired Lyme disease [2] as a result of being bitten by two infected deer ticks. Pls.' Original Compl. at 3, 5.

On August 30, 1995, plaintiffs filed suit invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. They alleged several state-law claims for relief claiming that his injury was a result of defendant's (1) negligence and (2) gross negligence in failing to warn him of the risk of Lyme disease; (3) misrepresentation and omission of information pertaining to hazards on its premises and of safety information; and (4) breach of a contractual agreement to identify safety hazards and provide safety information. The suit also includes Helen Riley's claim of loss of consortium and loss of household services.

The crux of plaintiffs' allegations is that defendant knew of the dangers of Lyme disease and took extensive precautionary measures to warn its own employees, hunters and recreational users of its properties. However, it failed to provide any similar information to its contractors, whose number included plaintiff Charles Riley. Plaintiff asserts that the defendant corporation had a common-law and contractual duty to share this information with him and that its failure to do so ultimately resulted in his infection with that disease.

## II. THE MOTION FOR SUMMARY JUDGMENT & RESPONSE

Defendant seeks summary judgment on all of plaintiffs' claims. First, defendant asserts that plaintiff's negligence claim is barred because the corporation owed no duty to plaintiff as related to Lyme disease. Specifically, defendant reasons that it owed no duty to Riley for several alternate reasons, which include (1) because he was an independent contractor; (2) because plaintiff contracted to accept the premises "as is" and to inspect the premises for any defects; (3) because it had no duty to warn of a danger that is common knowledge, i.e., the presence of infected deer ticks in East Texas forests; and (4) because it had no duty to warn or guard plaintiff from deer ticks, which are indigenous wild animals. Defendant concludes that plaintiff cannot prove an element of his negligence claim because there was no duty to warn him of the risks of Lyme disease. In the alternative, defendant argues that plaintiff contractually released and indemnified it from liability for negligence. Second, it reasons that, as the release prohibits plaintiff's negligence claim, the gross negligence claim cannot survive summary judgment. Third, defendant argues that it is entitled to summary judgment on plaintiffs' misrepresentation claim

---

**2.** Lyme disease is a multisystem disorder caused by the tick-borne spirochete Borrelia burgdorferi. David H. Walker et al., *Emerging bacterial zoonotic and vector-borne diseases: ecological and epidemiological factors,* 275 JAMA 463 (1996).

because (1) it made no false representations to Riley, (2) it provided him with safety information, (3) plaintiff contractually acknowledged the corporation's warning of potentially dangerous and/or hazardous conditions upon its premises, which serves as a disavowal of reliance and also prevents him from alleging that defendant omitted information pertaining to hazards on the property, (4) plaintiff cannot prove reliance as he had an independent duty to keep himself informed regarding hazards and health concerns of logging in Texas, which he failed to fulfill. Fourth, defendant asserts that it did not breach its contract with Riley because (1) the contract did not create a duty of informing him about all safety concerns, and specifically not for providing him with information related to Lyme disease, (2) Champion agreed only to help provide information related to logging accidents, which the corporation fulfilled by providing plaintiff with safety information. Finally, defendant concludes that it is entitled to summary judgment on Helen Riley's derivative claim for loss of household services and loss of consortium because it is not responsible for Charles Riley's personal injuries.

Plaintiffs respond that defendant had a duty to share information regarding Lyme disease with Charles Riley (1) because it agreed to share the information under the "Commitment to Safety and Loss Prevention" provision of the relevant contract, and that its failure to fulfill this duty supports their claims of breach of contract and negligence; (2) because it assumed the obligation of sharing information related to Lyme disease by providing some safety information to plaintiff; and (3) because plaintiff was an invitee on its property and the presence of infected ticks was an unreasonable risk of harm. Plaintiff next asserts that plaintiffs' claims are not contractually barred because (1) the indemnity and release provision does not satisfy Texas's fair notice requirement and (2) the parties agreement is unenforceable because there was a disparity in bargaining power between the parties.

Defendant replies that the contract does contain a valid indemnity and release provision and that the contract is enforceable because there is no question of fact regarding disparity in bargaining power between the parties.

## III. LAW AND ANALYSIS

This section initially sets out general factors for summary judgment analysis. Next, it considers Champion's motion for summary judgment as it applies to Riley's breach of contract claim. Then, the section addresses Riley's negligence claims based on premises liability, negligent contract performance, assumption of duty and misrepresentation. Fourth, the report analyzes Champion's asserted defense based upon a contractual release signed by Charles Riley. Fifth, it deals with Riley's gross negligence claims. Next, it examines Helen Riley's derivative claims. Finally, the report examines plaintiffs' claims for punitive damages.

### A. Summary Judgment Standard

A party is entitled to summary judgment upon a showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). All justifiable inferences must be drawn in favor of the non-movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Oliver Resources PLC v. International Fin. Corp.*, 62 F.3d 128, 130 (5th Cir.1995). Conclusory allegations are insufficient to defeat a motion for summary judgment when the movant has met its summary judgment burden. *See, e.g., Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115 (5th Cir. 1992); *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992). To successfully oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that a genuine issue of material fact exists. FED.R.CIV.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–22, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 184 (5th

Cir.1995). A material fact is any fact "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Meyers v. M/V Eugenio C*, 919 F.2d 1070, 1072 (5th Cir.1990). The Fifth Circuit explains that "a genuine dispute requires more than a showing of some metaphysical doubt—there must be an issue for trial." *Meyers,* 919 F.2d at 1072 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

## B. Breach of Contract Claim

■ In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex.1995); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). The court shall examine and consider the entire writing and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* Separate instruments executed at the same time, for the same purpose, and in the course of the same transaction, are to be considered as one instrument and are to be read and construed together. *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex.1984). When the interpretation of a contract is at issue, the court must first determine whether or not the provisions in question are ambiguous. *Coker*, 650 S.W.2d at 394. Whether a contract is ambiguous is a question of law. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518

(Tex.1980). A contract is ambiguous if, after examining the contract as a whole in light of the circumstances existing at the time the contract was signed and after applying the rules of construction, its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393. Mere disagreement over the meaning of a contract provision does not render the provision ambiguous. *Medical Towers, Ltd. v. St. Luke's Episcopal Hosp.*, 750 S.W.2d 820, 822 (Tex.App.—Houston [14th Dist.] 1988, writ denied). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes an issue of fact for the jury. *Coker*, 650 S.W.2d at 394.

■ Here, the parties' intent is not self evident. The Commitment to Safety and Loss Prevention states "Champion agrees to help contractors *identify problem areas and provide information that could help the contractors decrease their accident rate.*" Pls.' Resp. to Def.'s Mot. for Summ. J. Ex. G at 8 (copy of contract) (emphasis added). Although the provision creates a duty on the part of defendant to provide information to plaintiff, it is ambiguous because it cannot be given a certain and definite legal meaning.[3] *See National Union*, 907 S.W.2d at 520–21. It is unclear from the language as to the nature and scope of information to be provided. It cannot be said as a matter of law that "help contractors identify problem areas" and "provide information that could help the contractors decrease their accident rate" is exclusive of warning of Lyme disease.[4] In-

**3.** Defendant asserts that the release provision in the relevant contract relieved it of any contractual duty to provide information regarding Lyme disease to plaintiff. But it cannot be successfully argued that the release negates any duty created by the Commitment to Safety and Loss Prevention provision because the law requires that the contract be read so as to give effect to all the provisions of the contract so that none will be rendered meaningless. Thus, the release cannot be read to preclude the duty of Champion to assist Riley in some manner. *See Coker v. Coker*, 650 S.W.2d at 391.

**4.** The definition of "accident" is uncertain. Courts have reached conflicting determinations as to whether a tick bite resulting in Lyme disease is an "accident injury" or a "disease" in the

context of workers' compensation cases. *Compare Maxwell v. Carl Bierbaum, Inc.*, 48 Ark.App. 159, 893 S.W.2d 346, 347 (1995) (en banc) (concluding the tick-borne Lyme disease is a disease rather than an accidental injury for purposes of establishing a workers' compensation claim) *with Foxbilt Elec. v. Stanton*, 583 So.2d 720, 723 (Fla.Dist.Ct.App.), *review dismissed*, 589 So.2d 290 (Fla.1991) (holding that Lyme disease is an accident for purposes of workers' compensation claim); *Reinoehl v. Hamacher Pole & Lumber Co.*, 51 Idaho 359, 6 P.2d 860 (1931) (finding that claimant who had died of Rocky Mountain Spotted Fever as a result of tick bites received while on the job had a compensable "accident").

Texas courts have not ruled on this issue; however, at least one court has treated tick-borne

terpretation of this provision is an issue of fact; therefore summary judgment is im- proper as to this claim.

## C. Negligence and Gross Negligence Claims

Plaintiffs assert defendant was negligent in failing to provide Charles Riley with safety information related to Lyme disease, which it shared with employees and recreational users of its properties. Specifically, plaintiffs allege that Champion began warning its employees of the risk of Lyme disease as early as 1991, which included having the Texas State Department of Health give presentations to its personnel concerning the risk of the disease and how to guard against it. Pls.' Original Compl. at 4; Pls.' Resp. to Def.'s Mot. Summ. J. at 4–6. Further, plaintiffs note that it is undisputed that Champion also shared information concerning the disease with hunters and other recreational users of its property through a 1991 publication entitled "The Forest," which was allegedly distributed to all hunters on Champion lands. *Id.* at 6 n. 15. Defendant admits that various employees received information related to Lyme disease as early as 1993.[5] Def.'s Answer at 3.

### 1. Standard

█ Ordinary negligence claims in Texas require proof of three elements: (1) a legal duty owed by one to another; (2) a breach of that duty; and (3) damages proximately resulting from that breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Duty is the threshold inquiry in a negligence case. *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex.1993); *Phillips*, 801 S.W.2d at 525. The existence of a duty is a question of law. *Id.*

Texas law defines gross negligence as "such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex.1994) (emphasis omitted). Gross negligence contains two components: (1) the defendant's act or omission, and (2) the defendant's mental state. *Id.* Gross negligence differs from negligence in that "the defendant must be 'consciously indifferent' and his or her conduct must 'create' an extreme degree of risk." *Id.* (quoting *Williams v. Steves Indus.*, 699 S.W.2d 570, 573 (Tex.1985)).[6] The determination of gross negligence is relevant only to an assessment of exemplary damages. *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 721 (Tex. App.—San Antonio 1994, writ denied); *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex.App.—Austin 1990, writ denied). "Texas cases are unanimous in holding that recovery of actual damages is prerequisite to receipt of exemplary damages." *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex.1985) (quoting *Double-*

Lyme disease as a disease for workers' compensation purposes. *Cigna Ins. Co. v. Evans*, 847 S.W.2d 417, 419 (Tex.App.—Texarkana 1993, no writ) (stating that the workers' compensation claimant suffering from Lyme disease "has a disability caused by a disease").

5. Champion asserts that it should not be held liable for failure to provide this information because Charles Riley should have independently been aware of the dangers of Lyme disease. But if Champion found it necessary to warn its employees, as well as hunting lessees and recreational users as plaintiffs contend, Champion arguably should have drawn the same conclusion with respect to its independent contractors. Champion's Forest Resource employees, who have degrees in forestry or related fields and over 100 years cumulative experience, were not aware of the signs or symptoms of Lyme disease and of the necessity for early treatment prior to the information they were provided as Champion employees. Pls.' Resp. at 13 n. 21. Although

Champion ultimately may persuade the jury that knowledgeable independent contractors like Riley should have known of such dangers, that is a fact question, which cannot be determined appropriately by summary judgment.

6. In 1995, the Texas Civil Practice and Remedies Code was amended to delete "gross negligence" as a defined term. However, the *Moriel* factors are now incorporated in the definition of "malice" under the Code. Tex.Civ Prac. & Rem.Code Ann. § 41.001(5) (Vernon 1996). The amended Act took effect on September 1, 1995, and applies only to causes of action that accrued on or after that date. Riley was bitten by the Lyme-bearing tick in May, 1994 and was diagnosed with Lyme disease on August 10, 1994. Pls.' Original Compl. at 5; Riley Dep. at 170–75. Therefore, in the instant case, the prior legal definitions of gross negligence will be applied.

day & Co., Inc. v. Rogers, 674 S.W.2d 751, 754 (Tex.1984)).

The mere joinder of a claim in contract with a claim in tort does not alter the fundamental rule that breach of contract cannot support recovery of exemplary damages. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 745 (Tex.1986). Recovery of exemplary damages requires a finding of an independent tort with accompanying actual damages. *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex.1995) (quoting *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex.1993) (citations omitted)).

## 2. Premises liability

### a. Duty to independent contractors

Defendant argues that it did not owe a duty to plaintiff because he was an independent contractor. Defendant reaches this conclusion erroneously by applying the legal standard involving injury arising from an independent contractor's performance of his work. Def.'s Mot. for Summ. J. at 9 (citing *Phillips*, 801 S.W.2d at 525). There is a distinction between injuries arising from hazardous conditions existing on the premises and those arising from hazards created by the contractor during the course of his employment on the premises. *Compare Ensearch Corp. v. Parker*, 794 S.W.2d 2, 6 (Tex. 1990) (stating that a premises owner "does not have a duty to see that an independent contractor performs work in a safe manner" unless the employer retains the right to control the contractor's work) *with Delhi–Taylor Oil Corp. v. Henry*, 416 S.W.2d 390, 392 (Tex.), *cert. denied*, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 667 (1967) (holding that for purposes of premises liability, independent contractors are treated as invitees).

■■■ The duties owed by an owner depend in part on the role of the person injured. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex.1975). There are two distinct lines of cases. The first line involves preexisting conditions on the premises. In this instance, the premises owner owes the duty to warn an independent contractor and its employees of hidden dangers that exist when the contractor enters the premises or arise from activity other than that of the contractor; and, the owner is liable for injuries caused by defective or dangerous conditions existing on the premises at the time the independent contractor enters the property. *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 746 (Tex.1973). The second line arises when the dangerous condition arose out of the performance of the work for which the independent contractor was employed. A premises owner, in general, has no duty to see that an independent contractor performs work in a safe manner. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985). The duty to protect falls upon the party in control of the work. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19–20 (Tex.1987) (holding that a premises owner owes an independent contractor a duty to protect from hazards only if the owner retains the right to control some part of the independent contractor's work, but fails to exercise the retained control with reasonable care).

Here, plaintiff's injury arose out of a preexisting danger on the premises, not from an activity conducted in the course and scope of his employment with defendant. The infected tick that bit plaintiff was indigenous to that forest. Thus, the proper analysis follows the first line of cases. As a result, defendant owed plaintiff a duty to use reasonable care to keep the premises under his control in a safe condition.

### b. Duty to warn or protect invitees from wild animals

■■■ A premises owner owes invitees the duty to exercise ordinary care to keep the premises in a reasonably safe condition, to inspect the premises to discover latent defects, and to make safe any latent defects or give an adequate warning. *Gunn v. Harris Methodist Affiliated Hosps.*, 887 S.W.2d 248, 251 (Tex.App.—Fort Worth 1994, writ denied). But a premises owner is not required to "anticipate the presence of, or guard an invitee against harm from, animals ferae naturae" unless the owner "has reduced the animals to possession, harbors such animals, or has introduced onto his premises wild animals not indigenous to the locality." *Gowen v. Willenborg*, 366 S.W.2d

695, 697 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.); *see also* RESTATEMENT (SECOND) OF TORTS § 508. Deer ticks are indigenous to the woods of Texas. In addition, defendant denies that it reduced the infected deer ticks to its possession or harbored these creatures. There is no evidence suggesting otherwise.

Plaintiff argues that "[h]e is complaining of Champion's failure to warn of a 'disease,' not an animal or insect." Pls.' Resp. to Def.'s Mot. for Summ. J. at 12 n. 19. However, Lyme disease is transmitted through the tick's natural propensity to bite mammals, to which class plaintiff belongs. Although defendant owed plaintiff a duty to warn of hidden dangers, this duty did not include a warning of the presence of indigenous wild animals, such as the ticks that bit plaintiff. Because defendant owed no duty to plaintiff to warn him of the risks associated with contracting Lyme disease from infected deer ticks on its premises, defendant is entitled to summary judgment on plaintiff's negligence claim based on premises law.

### 3. Negligent performance of service undertaken by contract/assumed duty

Champion undertook the duty to provide Charles Riley with safety information. Plaintiffs allege that, although this information should have reasonably included information concerning Lyme disease, Champion failed to distribute that information to Mr. Riley. Plaintiffs argue that this failure to provide safety information related to the risks associated with Lyme disease, including the failure to emphasize the importance of obtaining timely treatment, was a breach of Champion's duty to use reasonable care.

On this tack, Riley proceeds under two additional nebulous prongs of the negligence doctrine, *viz.,* failure to use reasonable care in performing a contractual duty and failure to use reasonable care in performing an assumed duty. Riley characterizes these as causes of action for (a) negligent performance of a contract and (b) negligent performance of a voluntarily assumed duty.

### a. Negligence in performing contractual duties

In a confusing and complex "contort" scenario, Texas case law sometimes recognizes tortious liability for negligent performance of contracts. The doctrine emanates from a 1947 Texas Supreme Court case, *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947). In that case, the defendant contracted to repair a gas water heater, which later ignited the roof leading to the destruction of the house and its contents. The Texas Supreme Court determined that, although the contract obligated the defendant to restore the water heater to good working condition, the law also imposed a duty to act with reasonable skill and diligence in making the repairs so as not to injure a person or property by his performance. The court found that the defendant could be liable for breach of contract, for failing to repair the water heater properly, and for breach of a common-law duty, for the resulting destruction of the house and personal property. *Scharrenbeck,* 204 S.W.2d at 510. The court's opinion states:

> Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract.

*Id.*

*Scharrenbeck* has not been overruled, and continues to be cited by Texas courts. However, the decision has not been applied expansively as the above-quoted provision presages.[7]

---

7. No one has viewed *Scharrenbeck* as establishing that every breach of contract results in tort liability. Prosser and Keeton listed multiple factors to consider when attempting to distinguish between tort and pure contract liability. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 92, at 655–57 (5th ed.1984). Several cases differentiate between "nonfeasance," which resulted in liability only under contract, and "misfeasance," which produced tort liability. *Willcox v. American Home Assurance Co.,* 900 F.Supp. 850, 863 (S.D.Tex.1995) (citing *Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493 (Tex.1991)); MARK G. YUDOF, CONTORTS AND THE MUDDLED QUEST FOR BRIGHT LINES, STATE BAR OF TEXAS ADVANCED CIVIL TRIAL COURSE BOOK, § MM, at 13–14 (1991) (stating "The *Scharrenbeck* duty is important in a contract case only where a

*DeLanney* is one of the Texas Supreme Court's most recent pronouncements in the area of "contort" liability. *DeLanney,* 809 S.W.2d 493 (Tex.1991). The court severely restricted the practical import of *Scharrenbeck* by holding that if defendant's negligent conduct gives rise to liability "independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort"; but if it gives "rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *DeLanney,* 809 S.W.2d at 494 (citing *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947), *quoting,* 38 Am.Jur. *Negligence* § 20 (1941)); *see also Sergeant Oil & Gas Co. v. National Maintenance & Repair, Inc.,* 861 F.Supp. 1351, 1359 (S.D.Tex.1994) (stating "An allegedly negligent failure to perform a contract, standing alone, is not recognized as an actionable tort in Texas." Instead, the plaintiff must show that the defendant breached a duty arising "independent of the fact that a contract exists between the parties." (citations omitted)).

Thus, the purported cause of action for negligent performance of a contract is illusory, or at best superfluous. The tort action for negligent performance of a contract exists only if negligent conduct gives rise to liability "independent[ly] of the fact that a contract exists between the parties." *DeLanney,* 809 S.W.2d at 494. A duty arises independent of a contract when the duty is imposed by law rather than by the contract. *Id.; Pennington,* 810 S.W.2d at 783. If there must first be a separate and independent basis for negligence liability, the concept of a second distinct cause of action for negligent performance of a contract is aimless. Succinctly, if a defendant is liable for negligence irrespective of the contract, there is no apparent reason for a cumulative cause of action for negligent performance of the contract.[8]

In any event, this purported cause of action merges analytically with whatever may be the separate and independent cause of action. Thus, the appropriate inquiry is whether Champion had an extra-contractual duty to use reasonable care when providing safety information to Riley.

### b. Negligence in performing services

Champion argues that the only source that even arguably required it to warn Riley of the dangers of Lyme disease is the contract. Thus, it has no separate and independent duty of care. Riley responds that Champion's independent duty to use reasonable care arises from Texas common law as articulated in Section 323 of the Restatement (Second) of Torts.

Section 323 of the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary

---

party has allegedly engaged in misfeasance or some allegedly substandard performance, and the contract specifies either no standard of care or a quite minimal standard.").

Later cases limit this duty to contracts expressly creating that duty or arising from a special relationship between contracting parties. *See Aranda v. Insurance Co. of North Am.,* 748 S.W.2d 210, 212 (Tex.1988); *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). Justice Gonzalez noted in his concurring opinion in *Southwestern Bell Telephone Co. v. DeLanney* that the overly broad language in *Scharrenbeck* does not mean that every breach of contract results in a tort. 809 S.W.2d 493, 496 (Tex.1991) (Gonzalez, J., concurring); *see also Federal Express Corp. v. Dutschmann,* 838 S.W.2d 804, 818–19 (Tex. App.—Waco 1992) (Thomas, C.J., concurring in part, dissenting in part) (citing Yudof, *supra,* at

14), *aff'd in part, rev'd in part on other grounds,* 846 S.W.2d 282 (Tex.1993).

Another method used by Texas appellate courts to determine which duty or duties are breached is to examine the nature of the injury. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494–95 (Tex.1991); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). The action sounds only in contract when the injury is solely the economic loss to the subject of the contract itself. *DeLanney,* 809 S.W.2d at 494; *Reed,* 711 S.W.2d at 618; *United Servs. Auto. Ass'n v. Pennington,* 810 S.W.2d 777, 783 (Tex. App.—San Antonio 1991, writ denied); *Mid Continent Aircraft Corp. v. Curry County Spraying Serv.,* 572 S.W.2d 308, 312 (Tex.1978).

8. See William Powers, Jr. & Margaret Niver, *Negligence, Breach of Contract, and the "Economic Loss" Rule,* 23 Tex.Tech L.Rev. 477, 499–500 (1992).

for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323 (1966). Texas courts adopt Section 323 as the common law of Texas. *See Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976) ("[Section 323] has long been recognized by the courts of this State.");. *Diaz v. Southwest Wheel, Inc.*, 736 S.W.2d 770, 772–73 (Tex.App.—Corpus Christi 1987, writ denied) (stating "In order to have a cause of action ... the negligent rendering of a service to another must have increased the risk of harm, or the harm must have been suffered because of the other's reliance on performance of the task."). Consequently, Riley is within the bounds of appropriate legal discourse to hitch his wagon to Section 323.

The question remains, however, as to whether Section 323 applies. On this initial point, Riley's argument prevails. While a contract may be the vehicle by which one undertakes to perform a service, Texas law independently imposes a duty on those who "gratuitously or for consideration" provide services to exercise reasonable care to prevent physical harm. A contract to furnish safety information may be fairly characterized as an undertaking to perform a service. Thus, while the distinction is not free from confusion, these are separate legal concepts. Champion's undertaking to perform a safety information service, not merely its entry into a contract, satisfies Riley's obligation to show a potential separate and independent basis for negligence liability.

The inquiry does not end at this point because Section 323 liability may be imposed only in limited circumstances. First, liability attaches only to negligent rendition of services that the provider "should recognize as necessary for the protection of the other's person or things." RESTATEMENT (SECOND) OF TORTS § 323 (1966). Second, liability may

be imposed only for "physical harm resulting from ... failure to exercise reasonable care to perform [the] undertaking." *Id.* Third, a Section 323 plaintiff proceeding must show either that the defendant's failure to exercise reasonable care increased the risk of physical harm, or that the harm was suffered because of the other's reliance upon the undertaking. *Id.*

Riley makes sufficient showings on the first two factors to survive summary judgment. Safety information, by definition, qualifies as a service one ought to recognize as necessary for the protection of the other's person or things. Second, Riley alleges he was physically harmed as a result of Champion's negligence. The motion turns, then, on whether Riley can show a genuine issue of material fact on either component of the third prong of Section 323 liability.

### c. Increased risk of harm

Champion argues that its failure to provide safety information related to Lyme disease did not increase the risk of Riley being infected with the disease. Specifically, the argument is that failure to provide safety information related to Lyme's disease did not increase the risk of Mr. Riley being bitten by the offending tick. Therefore, it did not increase the risk of him contracting the disease.

Plaintiffs respond that it is the disease itself, not the actual tick bite, of which they complain. Specifically, they assert that Champion's failure to provide Riley with information related to Lyme disease increased the likelihood, not that he would necessarily contract the disease, but rather, of his developing a disabling, chronic Lyme infection.

Champion's omission may have contributed to Riley's complications. The duration of Lyme disease symptoms may be shortened and later illness prevented if early treatment is provided. But left untreated, late-stage Lyme disease can lead to severe medical conditions, such as encephalitis, heart block, and chronic arthritis.[9] If Champion had pro-

---

9. *Lyme Disease Vaccine Candidate Data Reported,* INFECTIONS DISEASE WKLY, July 8, 1996; Katie

Rodgers, *Lyme Disease,* DRUG TOPICS, Nov. 20, 1995, at 70. "The severity of Lyme disease var-

vided Mr. Riley with warnings about Lyme disease, he may have sought prompt treatment when he first developed a well-known symptom of the disease, i.e., a bulls-eye shaped rash. That treatment may have prevented his development of a chronic Lyme infection. Champion possessed this information, as evidenced by the warnings it provided its own employees, hunter lessees and other recreational users of its land.

Nevertheless, Champion's argument has abundant support in Texas case law. *See Diaz*, 736 S.W.2d at 773 (holding company's failure to warn of an inherent risk of a rim separating during installation of a tire did not increase risk of injury); *Southern Pac. Transp. Co. v. Luna*, 707 S.W.2d 113, 122 (Tex.App.—Corpus Christi 1985) (concluding company's failure to install automatic warning signals at railroad crossing did not increase existing danger of crossing), *rev'd on other grounds*, 724 S.W.2d 383 (Tex.1987); *Colonial Sav.*, 544 S.W.2d at 120 (determining that company's failure to obtain insurance did not increase the risk of house's destruction by fire).

The instant case is analogous to *Diaz*. In *Diaz*, appellants alleged that Southwest Wheel undertook to disseminate warning and instructional information regarding the servicing and handling of the type of multi-piece rim that was subject of the litigation, but failed to distribute such information to appellant or his employer. The *Diaz* court rejected appellants' assertions holding that the alleged failure to warn did not increase the risk of harm because it did not increase the risk of the rim separating during installation. *Diaz*, 736 S.W.2d at 773. The court determined that there was no increase of harm based upon the conclusion that the risk of the rim separating during installation was *inherent in the product*. Based upon this conclusion and the finding that there was neither any assertion made nor evidence presented that appellant had relied on Southwest Wheel to warn of the dangers of its products and that this reliance caused the harm, the court

held that the injured man had no claim under Section 323. *Id.*

For like reason, Riley cannot establish that Champion's alleged failure to provide safety information related to Lyme disease increased the risk of physical harm to Mr. Riley. The possibility of being bitten by a tick carrying the tick-borne spirochete Borrelia burgdorferi that causes Lyme disease is a risk inherent to the pursuit of activities in those forests in which ticks are an indigenous species, like those where Mr. Riley was apparently bitten. Champion's alleged negligence did not increase any inherent risks, as development of chronic Lyme disease syndrome is the natural progression of the infection.

To hold otherwise would emasculate *Diaz* as well as the ferae naturae rule of premises liability. In effect, a Section 323 claimant might recover by artfully pleading that negligent performance of a service exacerbated the degree of harm. This would elevate form over substance, and is too fine a distinction for application in practice. In sum, while the distinction advocated by Riley has some subjective appeal, it has no objective analytical support for legal application.

### d. Reliance upon the undertaking

Although unable to show an increased risk of harm, Riley may still recover under tort if he suffered physical harm as a result of reliance on defendant's promise to provide safety information related to Lyme disease. Champion argues that plaintiffs cannot prove section 323(b) reliance for two reasons: (1) Riley admittedly did not read the contract until he filed this suit, therefore, he could not have relied on its contents—including the Commitment to Safety and Loss Prevention under which defendant allegedly undertook a duty to provide Mr. Riley with safety information; and (2) Riley had an independent contractual duty to keep himself informed of the hazards and health concerns of logging in Texas forests. Supplemental Briefing Supp.

ies greatly, ranging from a mild flu-like illness in some patients to a disseminated disease that may include fever, multiple erythema migrans lesions, atrophy of the skin, and arthritic, cardiac, or

neurologic sequelae." Peter J. Krause et al., *Concurrent Lyme disease and babesiosis*, 275 JAMA 1657 (1996).

Def.'s Mot. Summ. J. at 4 (citing respectively Riley Dep. at 117, 210; *Id.* at 237).

The first argument is compelling. Riley admits that he did not read the relevant contract until after he filed the instant suit, Riley Dep. at 117, 210, and does not allege any oral modifications or explanations of this contract by defendant. Thus, Riley was unaware of defendant's potential contractual duty to provide safety information related to Lyme disease and therefore could not have relied on defendant Champion's alleged contractual obligation to perform this duty. *See Williford Energy Co. v. Submergible Cable Servs., Inc.,* 895 S.W.2d 379, 386–87 (Tex. App.—Amarillo 1994, no writ) (holding that plaintiff could not have relied, as a matter of law, on the contents of documents that it did not read and of which it was unaware).

Plaintiffs argue that Riley's deposition establishes a genuine issue of material fact as to whether he read the Commitment to Safety and Loss Prevention provision of the contract. At page 122 of the deposition, Riley answered that he complied with the safety practices listed in that provision and with OSHA regulations relevant to logging, a copy of which was attached to that provision. Riley's letter brief dated February 7, 1997, argues that this testimony reflects that Riley may have read or been aware of the Commitment to Safety and Loss Prevention provision; and if so, he may have relied on Champion's undertaking to provide safety information. But this answer at best merely shows that Riley allegedly complied with rules contained in the document. He neither stated nor has he claimed to have read the relevant documents. It is equally possible that he was familiar with these rules from another source, or that his practices conformed with those rules as a matter of general practice. Regardless, the fact is that plaintiffs have presented no evidence sufficient to show that Charles Riley was aware

of defendant's alleged contractual duty to supply him with additional safety information or that he relied on defendant's performance of this duty.[10] *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075–76 & n. 16 (5th Cir.1994) (holding summary judgment is appropriate when "critical evidence is so weak or tenuous on an essential fact that it could not support judgment in favor of the non-movant" (citation omitted)).

Plaintiffs cannot prove Champion's failure to provide information related to Lyme disease to Mr. Riley either increased his risk of physical harm above that which is inherent or caused him to suffer harm because of his reliance upon Champion's alleged promise and actual provision of safety information. Therefore, summary judgment is proper as against plaintiff's claims based on negligent performance of a service.[11]

## D. Misrepresentation

 Charles Riley's only remaining tort claim is for negligent misrepresentation. Texas law recognizes an independent cause of action for negligent misrepresentation. *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991). The Texas Supreme Court, in recognizing this cause, adopted the definition provided by *Restatement (Second) of Torts* (1977). Section 552 set forth the elements of negligent misrepresentation as follows: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers harm by justifiably relying on the representation. RESTATEMENT (SECOND) OF TORTS § 552 (1977); *Federal Land Bank Ass'n,* 825 S.W.2d at 442.

---

**10.** Even if Charles Riley read the commitment to safety provision of the relevant contract, plaintiffs have failed to present any evidence that he actually relied on defendant's performance of an alleged duty to provide safety information related to Lyme disease.

**11.** Champion's second argument is not meritorious. Riley may have had an independent duty to keep himself aware of Lyme disease and other hazards and health concerns facing loggers in Texas forests. Neither this duty, if any, or the breach thereof, means necessarily that he could not have relied on Champion to provide the information.

Plaintiffs do not allege that any misrepresentation was made other than those statements made in the 1993 contract that it would share safety information with Riley. Pls.' Original Compl. at 6.[12] Therefore, the court focuses solely on the language of that contract and the actions of the parties.

 Plaintiff must show that he justifiably relied upon the alleged misrepresentation and that he suffered as a result. RESTATEMENT (SECOND) OF TORTS § 552 (1977); *Federal Land Bank Ass'n,* 825 S.W.2d at 442. As earlier noted, however, Charles Riley admitted he never read the "cut and haul" contracts he entered into with defendant corporation prior to signing them. He stated in his deposition that "[t]he first time I ever read a base contract was whenever we entered into this lawsuit." Riley Dep. at 210. The element of reliance is thus disproved. Plaintiff could not have relied on defendant's textual representations when he contractually obligated himself to perform the work that allegedly led to his injury whether or not Champion provided him safety information. Any damages he suffered could not have been the result of his reliance on any alleged misrepresentations contained in the contract. *See Williford Energy Co.,* 895 S.W.2d at 386–87 (holding that a party cannot prove reliance on a writing where he did not have, and

was not aware of, the contents of that writing).

Summary judgment in favor of defendant is proper as to this cause of action. Therefore, summary judgment is proper as to all of plaintiff's tort claims of negligence.

### E. Gross Negligence

Recovery of actual damages in tort is necessary to pursue a gross negligence claim. *Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713, 721–22 (Tex.App.—San Antonio 1994, writ denied); *see Nabours v. Longview Sav. & Loan Ass'n,* 700 S.W.2d 901, 903 (Tex.1985). As recovery of actual damages on all of his tort claims is barred, summary judgment is also proper with regard to plaintiff's gross negligence claim.

### F. Release of negligence

The foregoing conclusions render Champion's alternative argument based on Charles Riley's contractual release academic. Nevertheless, this ground will be addressed for completeness.

Champion contends that plaintiff's negligence and gross negligence claims are barred by the affirmative defense of release. Specifically, defendant asserts that plaintiffs' claims are barred by an indemnity agreement and a release contained in the 1993 contract.[13] Def.'s Mot. for Summ. J. at 3–5.

---

**12.** Although failure to read a contract before signing it may constitute negligence, it does not bar equitable relief to one who has executed a contract in reliance upon false representations made to him by the other contracting party. *Plains Cotton Coop. Ass'n v. Wolf,* 553 S.W.2d 800, 803 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

**13.** The relevant contract between the parties covered the period from December 3, 1993 to October 31, 1994 ("the contract"). Def.'s Ex. 2 to Riley Dep. Supp. Summ. J.

Paragraph 13 of the contract contains an indemnity agreement and a release. Specifically, paragraph 13, in pertinent part, provides:

INDEMNITY: Contractor hereby assumes the entire responsibility and liability for any claims, demands and cause of action arising out of his performance of the conditions and obligations assumed hereunder. Contractor further agrees to fully indemnify and hold Champion harmless from and against any and all liability, claims, demands, suits, judgments,

liens, costs, expenses and attorney's fees caused by, arising from, or alleged to be caused by virtue of, the activities of Contractor undertaken hereunder or due to the presence of Contractor, or contractor's agent, servants, employees or subcontractors upon the land where the work is to be performed, whether owned by Champion or another, or arising from the condition of such land, regardless of whether caused by the negligence of Champion, its officers, employees, agents, licensees or invitees, or otherwise.... Furthermore, Contractor, by execution of this contract, acknowledges that Champion has advised and warned it of the possibility of potentially dangerous and/or hazardous conditions upon the company's land upon which operations are to be conducted hereunder, including, but not limited to, trees or logs possibly lodged in other trees. Therefore, Contractor agrees to accept the premises "AS IS" and as they presently exist, and further agrees to inspect the premises to determine the existence of any such potentially dangerous and/or hazardous conditions. In the event any such dangerous or

There is a clear legal distinction between an indemnity agreement and a release. An indemnity provision relates solely to claims by third parties whereas a release provision extinguishes a claim between parties to an agreement. One Texas court explained the distinction as follows:

> A release extinguishes any actual or potential claim the releasor may have against the releasee without regard to the releasee's liability to third parties. In contrast, an indemnity provision does not apply to claims between the parties to the agreement. Rather, it obligates the indemnitor to protect the indemnitee against claims brought by persons not a party to the provision.

*Derr Constr. Co. v. City of Houston,* 846 S.W.2d 854, 858 (Tex.App.—Houston [14th Dist.] 1992, no writ).

As noted, a release extinguishes a claim or cause of action as would a prior judgment and is an absolute bar to any suit on the released matter. *Dresser Indus. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993). Exculpatory clauses, such as releases and indemnity agreements, including those which release or indemnify for one's own negligence, are enforceable under Texas law. *See Allright, Inc. v. Elledge,* 515 S.W.2d 266, 267 (Tex.1974). Enforcement of these clauses is based upon satisfaction of fair-notice requirements, which ensure that indemnity and release agreements are equitable. *Dresser Indus.,* 853 S.W.2d at 507–09. These fair-notice requirements include the express negligence doctrine and the conspicuousness requirements. *Enserch Corp. v. Parker,* 794 S.W.2d 2, 8 (Tex.1990). It is a question of law whether a release or indemnity agreement satisfies both requirements. *Dresser,* 853 S.W.2d at 509; TEX. Bus. & COM. CODE ANN. § 1.201(10) (Vernon 1994).

The express negligence doctrine requires that a party seeking indemnity or release from the consequences of the party's own negligence must express that intent in specific terms within the four corners of the contract. *Enserch Corp.,* 794 S.W.2d at 8. As to conspicuousness, the Texas Supreme Court has adopted the Uniform Commercial Code's ("UCC") standard. *Dresser Indus.,* 853 S.W.2d at 511. A clause is conspicuous if it is "so written that a reasonable person against whom it is to operate ought to have noticed it." TEX.BUS. & COM.CODE ANN. § 1.201(10) (Vernon 1994). A "printed heading in capitals" is conspicuous. *Id.* Conspicuousness is a matter of law for the court to decide. *Id.* A provision on the front side of a contract, not hidden under a misleading heading or surrounded by unrelated terms is conspicuous. *See Enserch Corp.,* 794 S.W.2d at 9.

### a. Conspicuousness

Paragraph 13 of the contract contains the release provision. It is separately numbered, has a printed heading in capitals, and appears on the face or front side of the contract. However, the heading refers only to an indemnity, and the release provision appears only in the final sentence of a lengthy provision. As such, the provision is hidden under a misleading heading, and is surrounded by unrelated terms. Thus, it does not satisfy the conspicuousness requirement.

### b. Express negligence

Although paragraph 13 refers to defendant's own negligence, this language appears solely within that portion of the provision related to *indemnification.* Def.'s Ex. 2 to Riley Dep. Supp. Summ. J. at ¶ 13 (copy of 1993 "cut and haul" contract). The *release* portion of the relevant provision of the contract does not refer to acts of defendant's own negligence, nor does it profess to adopt or incorporate the own-negligence provisions of the indemnity. Therefore, the release provisions of the contract are not sufficient to

hazardous conditions are found to exist upon the premises, Contractor agrees to eliminate same, take such precautionary measures which are necessary to prevent injury or damage to persons and/or property, and further agrees to indemnify, hold harmless and release Champi-

on from and any and all liability whatsoever arising our [sic] of, or having to do with, the existence of any such dangerous and/or hazardous conditions and damage or loss resulting therefrom.
*Id.*

satisfy the express negligence doctrine with regards to claims based upon acts of defendant's own negligence. *See. e.g., Dresser Indus.*, 853 S.W.2d at 508; *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 724–26 (Tex.1989).

Because it fails to satisfy the fair-notice requirements of the express negligence doctrine and conspicuousness, the relevant release is unenforceable. *See Dresser Indus.*, 853 S.W.2d at 507–09.[14]

### G. Loss of Consortium and Loss of Household Services

Defendant asserts that Mrs. Riley's derivative claims must fail because it is not liable for her husband's injuries. Def.'s Mot. for Summ. J. at 15. Plaintiff Helen Riley asserts that she entitled to recover for the deprivation of her marital rights as a result of defendant's acts and omissions, which allegedly led to her husband's injury. Pls.' Original Compl. at 7.

Loss of consortium and loss of household services "are the type of injury which form the basis of a separate and independent cause of action."[15] *City of Denton v. Page*, 683 S.W.2d 180, 206 (Tex.App.—Fort Worth 1985), *aff'd in part, rev'd in part on other grounds*, 701 S.W.2d 831 (Tex.1986); *see Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 740 (Tex.1980). A spouse's right to maintain causes of action for loss of consortium and loss of household services based on the partner's injury are derivative of the defendant's liability to the injured spouse. *Motor Express, Inc. v. Rodriguez*, 925 S.W.2d 638, 640 (Tex.1996); *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex.1978) (loss of consortium); *City of Denton*, 683 S.W.2d at 206 (loss of consor-

tium and loss of services). The claimant is required to establish the defendant's liability for the partner's injuries. *Reed Tool Co.*, 610 S.W.2d at 738. Nevertheless, an injured spouse cannot sign away a partner's separate property right to sue for loss of consortium. *Whittlesey*, 572 S.W.2d at 669. In other words, a spouse's cause of action for loss of consortium arises independently and cannot be released by the injured spouse. *Id.; see also Crockett v. Bell*, 909 S.W.2d 70, 75 (Tex. App.—Houston [14th Dist.] 1995, no writ) (noting that a release does not bar a spouse's derivative claim unless that spouse also signed the release).

The existence of a viable claim is a prerequisite for the survival of Helen Riley's derivative causes of action for loss of consortium and loss of services. Plaintiff Charles Riley's tort claims are not viable; however, he has raised a fact question that precludes summary judgment of his breach of contract claim. The issue remains whether Helen Riley's derivative claims may survive based upon the remaining breach of contract claim.

The Texas Supreme Court recognized a cause of action for loss of consortium for injury caused to the other spouse by a third party tortfeasor's negligence. *Whittlesey v. Miller*, 572 S.W.2d 665, 668 (Tex.1978). That court has yet to address, however, the issue of whether a spouse's derivative claims for loss of consortium or loss of services claims are available based upon breach of contract. Therefore, this court must make an *Erie*-guess. *Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *see In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F.Supp. 700, 703–05 (E.D.Tex.1997). "Where no state court has decided the issue the federal court must 'make an educated

---

**14.** As the release is unenforceable, there is no need to determine whether a release or waiver of negligence will relieve a defendant of liability for gross negligence under Texas law. *Compare Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 722 (Tex.App.—San Antonio 1994, writ denied) (holding that a pre-injury release waiving negligence may also preclude a claim for gross negligence) *with Smith v. Golden Triangle Raceway*, 708 S.W.2d 574, 576 (Tex.App.—Beaumont 1986, no writ) (holding that a release cannot absolve a party from liability for gross negligence).

**15.** There is uncertainty in Texas as to whether these assertions form one or two separate causes of action. However, in *Whittlesey v. Miller*, the Texas Supreme Court stated:

"The term 'services' is generally taken to include the performance by a spouse of household and domestic duties. [citations omitted]. In Texas, it is a concept that is entirely separate and distinct from that of consortium." 572 S.W.2d 665, 666 n. 2 (Tex.1978). Further, it is clear that these are derivative claims arising as a result of an injury caused to the other spouse by a third party tortfeasor. *Id.* at 668.

guess as to how that state's supreme court would rule.'" *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1217 (5th Cir.1985) (quoting *Nobs Chem., U.S.A., Inc. v. Koppers Co.*, 616 F.2d 212, 214 (5th Cir.1980)). In making an *Erie*-guess, federal courts may properly consider the opinions of lower state courts. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir.1994). First, one state appellate court has asserted that a loss of consortium action "is derivative in the sense that it may not accrue without a separate tort." *Browning–Ferris Indus. v. Lieck*, 845 S.W.2d 926, 949 (Tex.App.—Corpus Christi 1992) (citing *Whittlesey*, 572 S.W.2d at 667), *rev'd on other grounds*, 881 S.W.2d 288 (Tex.1994). Second, a majority of other jurisdictions considering this issue have held that derivative claims find their foundation in tortious conduct and, therefore, may not be based upon a cause of action for breach of contract.[16] Based upon these factors, it is likely that the Texas Supreme Court, if presented with this question, would decide that a spouse's derivative claims may not rest upon a simple breach of contract claim. Therefore, summary judgment as to plaintiff Helen Riley's loss of consortium and loss of household services claims is proper and defendant's motion should be granted as to those causes of action.[17]

## H. Punitive Damages

### 1. Charles Riley

Under Texas law a recovery of punitive damages requires a finding of an indepen-dent tort with accompanying actual damages. *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex.1995) (quoting *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex.1993)); *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex.1985); *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981); *City Prods. Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex.1980). Punitive damages are not recoverable for a breach of contract absent an independent tort with accompanying actual damages. *Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986) (per curiam); *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 745 (Tex.1986); *see also Donnelley Mktg. v. Lionel Sosa, Inc.*, 716 S.W.2d 598, 602 (Tex. App.—Corpus Christi 1986, no writ) (holding that punitive damages based on negligence and gross negligence are not available where injury resulted from breach of contract). As plaintiff Charles Riley's claims are limited to those arising out of breach of contract, he is unentitled to receive punitive damages.

### 2. Helen Riley

Recovery of punitive damages is contingent upon a finding of an independent tort with accompanying actual damages. *Twin City Fire*, 904 S.W.2d at 665. Neither Charles nor Helen Riley has asserted viable tort claims. Thus, there is no independent tort, with accompanying actual damages, upon which Helen Riley may attach a claim for punitive damages.

---

16. *See Miller v. CBC Cos.*, 908 F.Supp. 1054, 1069 (D.N.H.1995) (drawing distinction on viability of consortium claim between contractual and tortious obligations, the latter being barred under New Hampshire law); *Perrin v. Hilton Int'l. Inc.*, 797 F.Supp. 296, 302 (S.D.N.Y.1992) (stating "a claim for loss of consortium cannot be derived from a spouse's breach of contract claim" under New York law) (citing *Odell v. Dalrymple*, 156 A.D.2d 967, 549 N.Y.S.2d 260 (4th Dept.1989)); *Greinader v. Diebold Inc.*, 747 F.Supp. 417, 420 (S.D.Ohio 1990) (finding Ohio law required dismissal of wife's loss of consortium claim required absent viable tort claim by husband); *Covert v. Allen Group, Inc.*, 597 F.Supp. 1268, 1270 (D.Colo.1984) (stating "[a] cause of action for loss of consortium cannot arise out of a cause of action for breach of contract" under Colorado law) (citing *Pioneer Constr. Co. v. Bergeron*, 170 Colo. 474, 462 P.2d 589, 592 (1969) (En Banc)); *A.L. Williams & Assocs., Inc. v. Williams*, 517 So.2d 596, 598 (Ala.1987) (determining that loss of consortium claim not available based on spouse's breach of employment contract claim under Alabama law); *Hopson v. St. Mary's Hosp.*, 176 Conn. 485, 408 A.2d 260, 265 (1979) (holding spouse's derivative claim for loss of consortium is contingent upon negligence of a third party); *but see Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 437–38 (3d Cir.1986) (finding Pennsylvania law did not permit recovery for loss of consortium based on breach of contract, unless the spouse asserting loss of consortium is also a party to the contract).

17. Even should the Texas Supreme Court follow the model established by Pennsylvania, plaintiffs nowhere allege that Helen Riley was a direct party to the contract.

The foregoing analysis makes an Erie guess that Helen Riley cannot derive a consortium-type cause of action from the surviving contract claim. Assuming arguendo, that Texas law would permit her derivative claims to be founded upon a contract claim, the issue exists whether she may receive punitive damages based on her claims of loss of consortium and loss of services.

Texas courts have yet to address the issue of whether punitive damages are available based upon a derivative claim, e.g., loss of consortium and loss of services. Therefore, the court must " 'make an educated guess as to how [Texas's] supreme court would rule.' " *Galindo*, 754 F.2d at 1217. A majority of those jurisdictions that have considered this issue have rejected awards of punitive damages for loss of consortium.[18] The Illinois Supreme Court gave the following reasons for rejecting awards of punitive damages for loss of consortium:

> [T]he underlying rationale for denying punitive damages in loss of consortium suits, and the one we adopt in this case, is that the injury is "indirect" or derivative in nature and the recovery in such actions is intended only as compensation.

*Hammond*, 73 Ill.Dec. at 357, 454 N.E.2d at 217.

The Texas Supreme Court will likely follow the majority of cases and will hold that punitive damages are not recoverable for derivative claims, e.g., loss of consortium and loss of services. Therefore, defendant is entitled to summary judgment on Helen Riley's claim for punitive damages premised upon her derivative claims.

## IV. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment should be granted in part and denied in part.

## V. RECOMMENDATION

Defendant Champion International Corporation's motion for summary judgment should be granted in part, denied in part. The motion should be granted so as to dismiss plaintiffs' claims for (1) negligence, (2) gross negligence, (3) misrepresentation (4) Helen Riley's claims of loss of consortium and loss of household services and (5) plaintiffs' claims for punitive damages. The motion should be denied as to plaintiffs' breach of contract claim.

## VI. OBJECTIONS

Any party may serve and file specific, written objections to proposed findings of fact, conclusions of law and recommendations of the magistrate judge within ten (10) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED.R.CIV. P. 6(a), 6(b), 72(b).

A party's failure to object bars that party from (1) entitlement to de novo review by district judge of proposed findings of fact, conclusions of law and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc).

May 23, 1997.

---

18. *See Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1337 (8th Cir.1985); *Hammond v. North Am. Asbestos Corp.*, 97 Ill.2d 195, 73 Ill. Dec. 350, 357, 454 N.E.2d 210, 217 (1983); *Fireman's Fund Am. Ins. Co. v. Coleman*, 394 So.2d 334, 341 (Ala.1980); *Moran v. Stephens*, 265 So.2d 379, 380 (Fla.Dist.Ct.App.1972); *Hughey v. Ausborn*, 249 S.C. 470, 154 S.E.2d 839, 843 (1967); *Golden v. R.L. Greene Paper Co.*, 44 R.I. 231, 116 A. 579 (1922); *see also* DAVID HITTNER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL ch. 2, at 462.1 (5th Cir. ed.1995). *But see Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692, 705–06 (D.Md.1981); *Sheats v. Bowen*, 318 F.Supp. 640, 648 (D.Del.1970).